**In re Johnie Gail HARLAN, Debtor.**

**Bankruptcy No. 94–80502F.**

United States Bankruptcy Court,
W.D. Arkansas,
Fayetteville Division.

March 6, 1995.

Aaron L. Squyres, Fayetteville, AR, for debtor.

William P. Watkins, Rogers, AR, for David E. Jeffery.

David D. Coop, Chapter 13 Trustee, North Little Rock, AR.

## MEMORANDUM OPINION

ROBERT F. FUSSELL, Bankruptcy Judge.

Pending before the Court is an Objection to Confirmation of the debtor's, Johnie Gail Harlan (Harlan), modified Chapter 13 plan filed by David E. Jeffery (Jeffery) on Sep-tember 16, 1994. The objection asserts that Harlan's plan is not proposed in "good faith" as required under 11 U.S.C. § 1325(a)(3) of the Bankruptcy Code.

The Court conducted an evidentiary hearing on December 1, 1994. Harlan testified at the December 1, 1994 hearing. At the hearing, the parties entered into evidence the following stipulated joint exhibits:

(1) A Judgment and Commitment filed in the Circuit Court of Benton County, Arkansas, on February 20, 1991, wherein Harlan pleaded guilty to a charge of Theft by Deception—Class B Felony.

(2) Voluntary petition, schedules, and statement of affairs filed on November 9, 1992, in Harlan's Chapter 7 bankruptcy case.

(3) Memorandum Opinion issued by this Court and filed on January 13, 1994, denying the discharge of Jeffery's claim under 11 U.S.C. § 523(a)(4) in Harlan's Chapter 7 case. The Court found by a preponderance of the evidence that Harlan had embezzled $36,394.36 from Jeffery.

(4) Voluntary petition, schedules, statement of affairs, and narrative statement of plan filed on August 3, 1994, in Harlan's Chapter 13 bankruptcy case.

(5) Harlan's notice of opportunity to object to modification of her Chapter 13 plan, and modified income and expense statement filed on October 17, 1994.

In determining the "good faith" issue under section 1325(a)(3), the Court must take into consideration the totality of the circumstances. The Court will therefore set forth a detailed statement of the facts in connection with Harlan's Chapter 7 and Chapter 13 bankruptcy cases.

### I. Jurisdiction

Subject matter jurisdiction over the pending matter is vested in this Court pursuant to 28 U.S.C. §§ 1334 and 157. The proceeding is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(I). The following Memorandum Opinion constitutes findings of fact and con-

clusions of law in accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## II. *Findings of Fact*

On February 20, 1991, a judgment was entered against Harlan in the Circuit Court of Benton County, Arkansas, on the charge of "Theft by Deception—Class B Felony."

On November 9, 1992, Harlan filed a voluntary petition under Chapter 7 of the Bankruptcy Code. On the date of the filing of the Chapter 7 petition, Harlan and her husband were separated. In her schedules, Harlan claimed an exemption pursuant to 11 U.S.C. § 522(d)(1) of $4,250.00 based on a one-half interest in ten (10) acres of unimproved, wooded land which she used as a co-residence. The schedules reflected the total current market value of this property as $8,500.00. Harlan listed monthly income of $1,009.64 and monthly expenditures of $1,005.00.

In her Chapter 7 schedules, Harlan listed three secured creditors: (1) the Bank of Gravette which had a secured claim of $1,000.00 based on a mortgage on ten (10) acres of unimproved pastures and woodland valued at $8,500.00; (2) Velma Thill who had a secured claim of $5,000.00 based on liens against a 1985 Nissan and a 1983 Ford valued at $3,500.00; and (3) Worthen National Bank of Springdale, Arkansas, which had a secured claim of $9,500.00 based on a lien against a 1991 automobile valued at $9,000.00.

Harlan listed the Internal Revenue Service (IRS) as having an unsecured priority claim in excess of $5,300.00 for unpaid taxes for the years 1989, 1990, and 1991. Jeffery's claim was listed as an unsecured nonpriority claim in the amount of $36,394.36.

During Harlan's Chapter 7 case, Jeffery filed an objection to dischargeability of the $36,394.36 indebtedness pursuant to 11 U.S.C. § 523(a)(4). On January 13, 1994, this Court filed a Memorandum Opinion finding Jeffery's indebtedness non-dischargeable pursuant to 11 U.S.C. § 523(a)(4) and entered a judgment in Jeffery's favor in the amount of $36,394.35.

Harlan was granted a discharge in her Chapter 7 case on March 10, 1993.

On August 3, 1994, Harlan filed a voluntary petition under Chapter 13 of the Bankruptcy Code. In her Chapter 13 petition, Harlan lists the IRS as having an unsecured priority claim in the amount of $4,931.00. Jeffery's claim is listed as an unsecured nonpriority claim in the amount of $36,394.00. Harlan's Chapter 13 plan narrative reflects trustee's compensation in the amount of $706.46; a filing fee in the amount of $130.00; and attorney's fees in the amount of $1,000.00. Harlan's plan is a sixty (60) month plan.

The plan narrative reflects that the $4,931.00 owing to the IRS will be paid in full as an unsecured priority claim. Unsecured creditors, including Jeffery, will be paid pro-rata under Harlan's Chapter 13 plan from the excess monies available from Harlan's net income after the payment of the IRS's claim.

Harlan's statement of current income reflects that she had been employed by the Arkansas Poultry Federation for approximately two months prior to the filing of her Chapter 13 petition.

Under "Schedule I—Current Income" of her Chapter 13 plan, Harlan lists the following:

| | |
|---|---|
| Current monthly gross wages, salary, and commissions | 920.83 |
| Estimated monthly overtime | 0.00 |
| SUBTOTAL | 920.83 |
| LESS PAYROLL DEDUCTIONS | |
| a. Payroll taxes and social security | 129.65 |
| * * * | |
| SUBTOTAL OF DEDUCTIONS | 129.65 |
| TOTAL NET MONTHLY TAKE HOME PAY | 791.18 |
| * * * | |
| TOTAL MONTHLY INCOME: | 791.18 |

Under "Schedule J—Current Expenditures" of her Chapter 13 plan, Harlan lists the following:

| | |
|---|---|
| Rent/home mortgage payments | 300.00 |
| * * * | |
| Telephone | 40.00 |
| * * * | |
| Food | 125.00 |

Clothing 30.00
Laundry and dry cleaning 20.00
Medical and dental expenses 25.00
Transportation 75.00

\* \* \*

Auto 29.00

\* \* \*

TOTAL MONTHLY EXPENSES 644.00

\* \* \*

A. Total projected monthly income 791.18
B. Total projected monthly expenses 644.00
C. Excess income (A minus B) 147.18
D. Amount paid into Plan Monthly 147.18

On September 16, 1994, Jeffery filed the instant objection.

On October 17, 1994, Harlan filed a notice of modification of her Chapter 13 plan.[1] The modified plan reflects a change in Harlan's employment. She now works at the McDonald County Reorganized School. Under the modified plan, Harlan's monthly transportation expense is increased to $120.00. The modified plan contains a modified statement of current income. The modified plan reflects Harlan's gross wages as $579.69, with payroll taxes and Social Security deductions of $34.97, leaving Harlan with net monthly income of $544.72 from the McDonald County Reorganized School.

The modified plan reflects that Harlan is also employed part-time at Unicare Homes, Inc. Harlan's monthly income from this part-time job is listed as $342.16. The modified plan reflects Harlan's total monthly income as $886.88. Under the modified plan, Harlan increases her monthly plan payments to $197.88.

Under "Schedule J—Current Expenditures" of the modified Chapter 13 plan, Harlan lists the following:
Rent/home mortgage payments ... 300.00

\* \* \*

Telephone 40.00

\* \* \*

Food 125.00
Clothing 30.00
Laundry and dry cleaning 20.00

Medical and dental expenses 25.00
Transportation 120.00

\* \* \*

Auto 29.00

\* \* \*

TOTAL MONTHLY EXPENSES 689.00

\* \* \*

A. Total projected monthly income 886.88
B. Total projected monthly expenses 689.00
C. Excess income (A minus B) 197.88
D. Amount paid into Plan Monthly 197.88

Harlan testified that she and her husband separated in February of 1992. She stated that they have lived apart since that time. Harlan testified that she receives no financial support from her husband. Harlan testified that she claimed a one-half interest in real property where her mobile home was located as a homestead exemption.

Harlan testified that she believed that she had no choice but to file a Chapter 13 bankruptcy petition in order to obtain financial relief. Harlan testified that she filed her Chapter 13 petition to claim as exempt the real property upon which the IRS had placed a levy, and because the IRS had placed a levy on her husband's wages. Harlan testified that the IRS had placed a levy on other property which she and her husband owned. The IRS's claim resulted from taxes assessed on the funds Harlan had embezzled from Jeffery.

Harlan testified that because of her felony conviction she has not been able to find employment as a bookkeeper which is her profession. Harlan testified that she lost her job at the Arkansas Poultry Federation due to her felony conviction. She testified that she presently works approximately sixty (60) hours per week. Harlan testified that she does not believe that her income or job prospects will improve in the future.

Harlan testified that she is making her best efforts to pay all of her disposable income for the next five years towards the debts listed in her schedules and included in her modified plan. Counsel for Harlan stated that under the modified plan, Harlan

1. Jeffery has not filed a separate or renewed objection to Harlan's modified plan.

would be paying twenty-two percent (22%) of her net income into the modified plan.

Harlan acknowledged that both of the creditors' debts listed in her modified Chapter 13 plan were nondischargeable in her Chapter 7 case.

### III. Conclusions of Law

█ Harlan is seeking to have her modified plan confirmed in accordance with 11 U.S.C. § 1325.[2] Jeffery contends that Harlan's modified plan does not meet the "good faith" requirements of section 1325(a)(3) and should not be confirmed.[3]

The Bankruptcy Code does not define "good faith." Therefore, the Court will look to case law to decide this issue. The Eighth Circuit Court of Appeals' most recent discussion of the "good faith" requirements contained in section 1325(a)(3) is found in *Noreen v. Slattengren*, 974 F.2d 75 (8th Cir. 1992). In *Noreen*, the Court states:

A bankruptcy court shall confirm an otherwise appropriate Chapter 13 plan if "the plan has been proposed in good faith and not by any means forbidden by law," 11 U.S.C. § 1325(a)(3) (1988). This requirement "demands a separate, independent determination.... [T]he proper inquiry should [analyze] whether the plan constitutes an abuse of the provisions, purpose or spirit of Chapter 13. The bankruptcy court must utilize its fact-finding expertise and judge each case on its own facts after considering all the circumstances of the case." *In re Estus*, 695 F.2d 311, 316 (8th Cir.1982). Estus included a non-exclusive list of eleven factors that the court may find relevant in making its determination. See *Estus*, 695 F.2d at 317. Most of these factors were "subsum[ed]" by 11 U.S.C. § 1325(b) (1988) (enacted in 1984), which narrowed the focus of a bankruptcy court to "look at factors such as whether the

---

2. 11 U.S.C. § 1325 provides:

(a) Except as provided in subsection (b), the court shall confirm a plan if—
(1) the plan complies with the provisions of this chapter and with the other applicable provisions of this title;
(2) any fee, charge, or amount required under chapter 123 of title 28, or by the plan, to be paid before confirmation, has been paid;
(3) the plan has been proposed in good faith and not by any means forbidden by law;
(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;
(5) with respect to each allowed secured claim provided for by the plan—
(A) the holder of such claim has accepted the plan;
(B) (i) the plan provides that the holder of such claim retain the lien securing such claim; and
(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or
(C) the debtor surrenders the property securing such claim to such holder; and
(6) the debtor will be able to make all payments under the plan and to comply with the plan.
(b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the

plan unless, as of the effective date of the plan—
(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
(B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.
(2) For purposes of this subsection, "disposable income" means income which is received by the debtor and which is not reasonably necessary to be expended—
(A) for the maintenance or support of the debtor or a dependent of the debtor; and
(B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.
(c) After confirmation of a plan, the court may order any entity from whom the debtor receives income to pay all or any part of such income to the trustee.
11 U.S.C. §§ 1325(a) and (b).

3. Jeffery also asserts that the nature of the debt represents monies owed as a result of Harlan's criminal activity. Jeffery argues that the debt is therefore nondischargeable. The Eighth Circuit Court of Appeals rejects this argument in *In re LeMaire*, 898 F.2d 1346 (8th Cir.1990). In *In re LeMaire*, the Court states: "Handeen [creditor] vigorously argues that, as a matter of law, his civil judgment cannot be discharged because it arose from a criminal act. The panel rejected this argument and we do likewise." *Id.* at 1348.

debtor has stated his debts and expenses accurately; whether he has made any fraudulent misrepresentation to mislead the bankruptcy court; or whether he has unfairly manipulated the Bankruptcy Code." *Education Assistance Corp. v. Zellner,* 827 F.2d 1222, 1227 (8th Cir.1987). The totality of the circumstances analysis adopted by Estus, however, remains in place. *In re LeMaire,* 898 F.2d 1346, 1349 (8th Cir.1990) (en banc).

*Noreen v. Slattengren,* 974 F.2d 75, 76 (8th Cir.1992).

■ Based on the factors set forth in *Education Assistance Corp. v. Zellner,* 827 F.2d 1222, 1227 (8th Cir.1987), the Court will examine the facts to determine the "good faith" issue in the present case as to (1) whether Harlan has stated her debts and expenses accurately; (2) whether Harlan has made any fraudulent misrepresentations to mislead the Bankruptcy Court; and (3) whether Harlan has unfairly manipulated the Bankruptcy Code.

■ In determining whether Harlan's modified plan satisfies the "good faith" requirement under section 1325(a), the Court must consider it jointly with Harlan's Chapter 7 petition. While the serial filing of the two proceedings does not constitute "bad faith," the "good faith" determination requires the Court to examine the proximity in time of the two proceedings. The Court must compare the debts listed in Harlan's Chapter 7 case with those listed in her Chapter 13 case. The Court must also compare the income and expenses listed in Harlan's Chapter 7 case with the income and expenses listed in her Chapter 13 case.

Harlan's Chapter 7 petition was filed on November 9, 1992. Harlan's Chapter 7 income statement reflected $1,009.64 in net monthly income, and monthly expenses of $1,005.00. At that time, Harlan stated that she was employed as a clerk/typist at Family Support Services. As previously stated, Harlan listed the following debts in her Chapter 7 schedules: (1) the Bank of Gravette which had a secured claim of $1,000.00 based on a mortgage on ten (10) acres of unimproved pastures and woodland valued at $8,500.00; (2) Velma Thill who had a secured

claim of $5,000.00 based on liens against a 1985 Nissan and a 1983 Ford valued at $3,500.00; and (3) Worthen National Bank of Springdale, Arkansas, which had a secured claim of $9,500.00 based on a lien against a 1991 automobile valued at $9,000.00. Moreover, Harlan listed the IRS as having an unsecured priority claim in excess of $5,300.00 for unpaid taxes for the years 1989, 1990, and 1991. Jeffery's claim was listed as an unsecured nonpriority claim in the amount of $36,394.36.

The evidence reflects that Harlan filed her Chapter 13 petition on August 3, 1994, approximately twenty-one (21) months after her Chapter 7 petition had been filed. As previously stated, Harlan lists two debts on her Chapter 13 petition: (1) the IRS's unsecured priority claim in the amount of $4,931.00, and (2) Jeffery's unsecured nonpriority claim in the amount of $36,394.00.

At the December 1, 1994 hearing, Harlan testified that the Bank of Gravette's $1,000.00 secured claim listed in her Chapter 7 petition had been paid. She testified that the debts owed to Velma Thill and Worthen National Bank of Springdale had been discharged in her Chapter 7 case. Harlan testified that her husband had assumed the payments on the vehicles. Harlan testified that since their separation, her husband has resided in Missouri.

Harlan's Chapter 13 income statement reflects net monthly income in the amount of $791.18, and monthly expenses in the amount of $644.00. Harlan states that she has changed jobs since the filing of her Chapter 7 petition. Harlan states that she is currently employed by the Arkansas Poultry Federation. Harlan proposes to pay $147.18, which is all of her monthly disposable income, to the Chapter 13 trustee to fund her Chapter 13 plan.

On October 17, 1994, Harlan filed a modification to her Chapter 13 plan, and amended her income and expense statement. The amended income statement reflects that Harlan is now employed at the McDonald County Reorganized School. Harlan lists her net monthly income from this employment as $544.72. Harlan's amended income and ex-

pense statement reflects that she also has a part-time job with Unicare Homes, Inc. Harlan's modified plan reflects that she has net monthly income from this employment in the amount of $342.16. Harlan's lists her total net monthly income as $886.88. Harlan lists monthly expenses in the amount of $689.00. Under the modified plan, Harlan increases her monthly plan payments to $197.88.

In her Chapter 7 petition, Harlan listed monthly expenses in the amount of $1,005.00. Under her modified Chapter 13 plan, Harlan lists monthly expenses in the amount of $689.00. This decrease in monthly expenses is primarily due to Harlan not making a car payment. The remainder of Harlan's monthly expenses are generally the same in her Chapter 7 and Chapter 13 cases:

| | Chapter 7 | Chapter 13 | Amended Chapter 13 |
|---|---|---|---|
| Food | $120.00 | $125.00 | |
| Telephone | $ 12.00 | $ 40.00 | |
| Clothing | $ 25.00 | $ 30.00 | |
| Medical | $ 25.00 | $ 25.00 | |
| Transportation | $100.00 | $ 75.00 | $120.00 |
| Recreation | $ 30.00 | –0– | |
| Charitable Contributions | $ 25.00 | –0– | |
| Automobile Insurance | $ 40.00 | $ 29.00 | |
| Automobile Inst. Payment | $258.00 | –0– | |

Harlan's monthly expense statement reflects that she is living very modestly. A review of Harlan's living expenses indicates that there is no "fat" to trim from her "bare bones" existence. Harlan's monthly income statement reflects that she is making a "good faith" effort to increase her income by working full-time at the McDonald County Reorganized School, and by also working part-time at Unicare Homes, Inc. to fund her modified Chapter 13 plan.

The Court credits Harlan's testimony that because of her felony embezzlement conviction she cannot find a higher paying job as a bookkeeper, and that she probably will not be able to find a higher paying job in the foreseeable future. The evidence supports the Court's finding that Harlan has accurately stated her debts and expenses.

As to the second element set forth in *Zellner*, the Court concludes that Harlan has not made any fraudulent misrepresentations to mislead the Bankruptcy Court in her Chapter 13 case.

Whether Harlan has unfairly manipulated the Bankruptcy Code, which is the third factor in *Zellner*, is a more difficult issue. Jeffery, the objecting creditor in the instant case, filed an adversary proceeding in Harlan's prior Chapter 7 case. That adversary proceeding was tried on the merits and this Court found by a preponderance of the evidence that Harlan had embezzled $36,394.36 from Jeffery. This Court awarded Jeffery a nondischargeable judgment in Harlan's Chapter 7 case. Harlan now seeks to discharge a substantial portion of that judgment in her Chapter 13 case. The Court will thus consider the totality of the circumstances in Harlan's bankruptcy filings in making conclusions as to her motivation and sincerity in seeking Chapter 13 relief.

The first question to be asked is why did Harlan originally file under Chapter 7 instead of Chapter 13 of the Code? It does not seem fair to put a creditor through the time and substantial expense of filing a complaint objecting to the dischargeability of a debt based on fraud, successfully obtain a nondischargeable judgment, and then have a substantial portion of the judgment discharged in a subsequent Chapter 13 case. Harlan's attorney would perhaps be in a better position to answer this question.[4]

Harlan listed assets of $15,650.00 and liabilities of $57,294.00 in her Chapter 7 schedules. Harlan's Chapter 7 income and expense statement reflected that her monthly expenses were very conservative. The Court cannot conclude that Harlan was not eligible to file a Chapter 7 petition. The Court likewise cannot conclude that the filing of Harlan's Chapter 7 petition was abuse under 11 U.S.C. § 707(b).[5] The Court concludes that

---

**4.** A debtor is not statutorily prohibited from filing a Chapter 13 petition within six years after receiving a discharge under Chapter 7. *See* 11 U.S.C. §§ 727(a)(8) and (9) and 103(b).

**5.** 11 U.S.C. § 707 provides:
(b) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a

Harlan has not unfairly manipulated the Bankruptcy Code.

As previously stated, Harlan testified that the reason for filing her Chapter 13 case was to claim as exempt the real property upon which the IRS had placed a levy, and because the IRS had placed a levy on her husband's wages. Harlan testified that the IRS had placed a levy on other property which she and her husband owned. Harlan testified that the IRS's claim was based on taxes assessed on the funds she embezzled from Jeffery. The Court credits Harlan's testimony that the IRS's levies were the primary motivating factor in her seeking relief under Chapter 13 of the Code. Harlan did not file a Chapter 13 petition seeking to avoid Jeffery's nondischargeable claim immediately after receiving her discharge under Chapter 7.

The facts in the instant case are distinguishable from the facts set forth in *Noreen v. Slattengren,* 974 F.2d 75 (8th Cir.1992). In *Noreen,* the debtor sought Chapter 13 relief eleven (11) days before her civil suit was to go to trial. In *Noreen,* the debtor filed a Chapter 13 case not because of debts that ordinarily come due, but in anticipation of a likely damage award in the civil suit. In *Noreen,* the initial plan offered only a meager payment plan based on a thirty-six (36) month plan. The plan was lengthened to sixty (60) months and plan payments were increased only in response to the creditor's objection.

Harlan's modified plan is a sixty (60) month plan, the maximum permitted by statute. Harlan's modified plan reflects net monthly income in the amount of $544.72 from her job at the McDonald County Reorganized School. Harlan's modified plan also reflects net monthly income in the amount of $344.16 from her part-time job with Unicare Homes, Inc. Under the modified plan, Harlan increases her net monthly income to $886.88, and increases her monthly plan payments to $197.88. This is over one-fifth of her entire net monthly income. Harlan's

living expenses consist of bare necessities. Under Harlan's modified plan, Jeffery will receive approximately a fourteen percent (14%) pay-out of his claim. After claimed exemptions, Jeffery would have received no pay-out of his claim in Harlan's Chapter 7 case.

The facts in the present case are likewise distinguishable from the facts in *In re LeMaire,* 898 F.2d 1346 (8th Cir.1990). In *In re LeMaire,* the Eighth Circuit Court of Appeals held that the debtor's Chapter 13 plan was not proposed in "good faith" because the debtor sought the protection of the bankruptcy court when a creditor tried to collect a judgment. The debtor in *In re LeMaire* listed $3,000.00, which he had actually paid on the creditor's judgment, as a debt owed to his parents. This was evidenced by a promissory note signed the day before he sought bankruptcy protection. The debtor failed to include this contingent debt when he filed his petition. This egregious conduct of the debtor demonstrated a willful and malicious injury to the creditor.

In the instant case, there is no evidence that Harlan filed her Chapter 13 bankruptcy case because Jeffery was attempting to collect his judgment. There is no evidence of Harlan not listing all of her debts. There is likewise no evidence of Harlan making preferential payments prior to filing her Chapter 13 bankruptcy case. Further, Harlan's conduct in embezzling funds from Dr. Jeffery is simply not as egregious as the debtor's conduct of attempted murder in *In re LeMaire.*

In *In re LeMaire* the Court stated:

> While the bankruptcy court correctly recognized that the exceptions to discharge specified in section 523(a)(6) do not expressly apply to a Chapter 13 petition, the court's analysis falls short by failing to examine the public policies promoted by not discharging the debts enumerated there. It is valuable to compare section 523(a)(6), stating that debts resulting from willful and malicious injury may not be discharged, with the other debts which

---

case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions

of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

11 U.S.C. § 707(b).

section 523 states may not be discharged. The section exempts from discharge debts for a tax or customs duty; for money obtained by false pretenses; for embezzlement or larceny; for support of a spouse, former spouse, or child; for governmental fines or penalties; and for educational loans guaranteed by the government. While there is a strong public policy prohibiting the discharge of each of these types of debts, we believe that there is a particularly strong policy prohibiting the discharge of a debt resulting from a willful and malicious injury following an attempted murder.

We recognize that Congress intentionally expanded the scope of the debtor's discharge in Chapter 13 after he completes his plan in order to "encourage more debtors to attempt to pay their debts under bankruptcy court supervision." "The fact that a discharge would not be available in a [chapter 7] liquidation case should furnish a greater incentive for the debtor to perform under the [Chapter 13] plan." (citations omitted)

*In re LeMaire,* 898 F.2d at 1352–53.

The evidence presented, and Harlan's motivation and sincerity, clearly support the fact that Harlan has filed a "good faith" Chapter 13 plan even though she seeks to discharge a substantial portion of Jeffery's Chapter 7 nondischargeable judgment. *See In re Keckler,* 3 B.R. 155 (Bankr.N.D.Ohio 1980) (debt based on debtor forging checks of employer discharged in Chapter 13 case). Harlan filed her Chapter 13 case to obtain additional time in which to pay the IRS's pre-petition unsecured tax priority claim.

The Court is convinced that Harlan is making the maximum payments under her modified Chapter 13 plan in order to obtain a discharge in her Chapter 13 case. Harlan will not receive a discharge unless she completes all of her payments under her modified Chapter 13 plan.

The Court will enter an order overruling Jeffery's objection to confirmation of Harlan's modified Chapter 13 plan, and the

Court will confirm Harlan's October 17, 1994 modified Chapter 13 plan of reorganization.