**In re CS ASSOCIATES, d/b/a University Nursing & Rehabilitation Center, Debtor.**

**Bankruptcy No. 88–12842S.**

United States Bankruptcy Court, E.D. Pennsylvania.

Nov. 4, 1993.

Mitchell W. Miller, Miller & Miller, Philadelphia, PA, Trustee.

D. Ethan Jeffrey, Ciardi, Fishbone & DiDonato, Philadelphia, PA, for Trustee.

Carol C. Priest, U.S. Dept. of Justice, Washington, DC, for IRS.

Pace Reich, Clark, Ladner, Fortenbaugh & Young, Philadelphia, PA, for debtor.

John J. Francis, Jr., Shanley & Fisher, P.C., Morristown, NJ, William Sweeney, Schubert, Bellwoar, Mallon & Walheim, Philadelphia, PA, for United Jersey Bank.

J. Scott Victor, Saul, Ewing, Remick & Saul, Marc J. Zucker, Mann, Ungar & Spector, Philadelphia, PA, for Raymond Silk, M.D.

Robert J. Bush, Media, PA, for Eugene Spitz, M.D.

Joseph DiGuiseppe, Asst. City Solicitor, Law Dept., Enforcement Div., Philadelphia, PA, for City.

Dr. Nicholas Canuso, pro se.

Frederic Baker, Asst. U.S. Trustee, Philadelphia, PA.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

### A. INTRODUCTION

Before the court for resolution is an Objection ("the Objection") of MITCHELL W. MILLER, ESQUIRE, the Chapter 7 Trustee ("the Trustee") of the Debtor, CS ASSOCIATES, d/b/a University Nursing & Rehabilitation Center ("the Debtor"), to Proof of Claim Number 6, filed by the Internal Revenue Service ("the IRS"), which incorporates secured tax liens totalling $575,241.79. The Objection presently apparently seeks only a determination by this court that the IRS' otherwise undisputed claim is not a secured claim against insurance proceeds ("the Proceeds") recovered by the Trustee post-petition for post-petition damages to the Debtor's insured real property.[1] Specifically, the Trustee objects to the alleged secured status of the IRS' claim on the basis that the insur-

ance proceeds are the product of a post-petition policy and, as such, are post-petition property of the Debtor to which the automatic stay prevents the IRS' pre-petition lien from attaching.

Adhering to findings made in this court in a prior decision in the Debtor's case, *In re CS Associates,* 121 B.R. 942, 948–49 (Bankr. E.D.Pa.1990) ("*CS I*"), we agree that the IRS' lien does not attach to the proceeds because they arise as the result of a "new" policy acquired by the Debtor post-petition. Consequently, they represent post-petition property of the Debtor to which the IRS' pre-petition lien cannot attach by virtue of the automatic stay.

### B. FACTUAL AND PROCEDURAL HISTORY

This matter arises in connection with the voluntary bankruptcy case of the Debtor, a Pennsylvania limited partnership which, at the time of the filing of this case under Chapter 11 of the Bankruptcy Code on August 15, 1988, owned and operated a nursing home. This case was subsequently converted to a Chapter 7 case on April 18, 1990, and the Trustee was appointed on April 25, 1990. A more detailed history of the case is set forth in this court's decision in *CS I, supra,* 121 B.R. at 944–45, in which we held that United Jersey Bank ("UJB"), the Indenture Trustee of a bond issue to build the nursing home, was entitled to modify a liability insurance policy to include its coverage; and *In re CS Associates, Miller v. Spitz,* 160 B.R. 899, 900–02 (Bankr.E.D.Pa.1993) ("*CS II*"), in which we found that the Trustee was entitled to recover a substantial deficiency against one of the Debtor's doctor-partners pursuant to 11 U.S.C. § 723. The instant dispute is one of the last outstanding matters which must be resolved prior to a continued Final

---

1. The Trustee's Objection and Amended Objection also argues that the amount of the claim has not been established. However, the Trustee has presented no evidence that the amount of the claim is excessive or otherwise erroneous. Therefore, the claim must stand as filed as to amount. *See In re Allegheny Int'l, Inc.,* 954 F.2d 167, 173 (3rd Cir.1992); *In re Resyn Corp. v. United States,* 851 F.2d 660, 663 (3rd Cir.1988);

*In re Kirnie,* 93–2 USTC ¶ 50,434, 1993 WL 128158, slip op. at \*3 (Bankr.E.D.Pa. April 23, 1993); and *In re Compass Marine Corp.,* 146 B.R. 138, 144–45 (Bankr.E.D.Pa.1992) (objector has the burden of producing evidence that a claim is erroneous or excessive). Furthermore, the Trustee did not express any opposition to the amount of the IRS' claim in his post-trial briefing.

Audit hearing of November 18, 1993, in this case. *See id.* at 909–11.

The Objection at issue was initially filed by the Trustee as one of many claims objections on June 17, 1993, and recited merely generalized objections to the IRS' claim. On July 17, 1993, the Trustee filed an Amended Objection setting forth the specific bases for same. The Amended Objection stated, most prominently, that the IRS' claim was not secured and was therefore not entitled to that status in the distribution process.

A hearing on the Motion was initially scheduled on July 27, 1993, but it was ultimately continued to September 23, 1993. On the latter date, the parties appeared by counsel, who agreed in open court that a Stipulation of Facts ("the Stipulation") would be prepared and submitted as the record for the Motion. In addition, the IRS submitted a substantial Pre-trial Memorandum, and the parties agreed to submit further Briefs in support of their respective positions, a process which ended on October 22, 1993.

The Stipulation recited that the IRS had duly filed several pre-petition tax liens against the Debtor for failure to pay its federal taxes. It further stated that, at the time of the Debtor's bankruptcy filing, its real property was insured by a policy written by Pennsylvania Millers Mutual Insurance Co. ("PMMI"). Thereafter, it noted that the Debtor, via the Trustee, obtained a renewal of insurance in the form of a policy which was dated for May 16, 1989, and covered the period from May 3, 1989, to May 3, 1990.

The Stipulation further recited that, in December, 1989, the Debtor's real property was vandalized by unknown assailants. As a result thereof, the Trustee made a claim against the PMMI policy.[2] The claim was disputed and the Trustee initiated suit against PMMI. The claim was ultimately settled for $750,000 in December, 1992.

## C. DISCUSSION

The Internal Revenue Code, 26 U.S.C. § 1, *et seq.* ("the IRC"), at 26 U.S.C. § 6321, provides as follows:

§ 6321. **Lien for taxes**

If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

Thus, § 6321 gives the federal government a very broad lien, covering "all property and rights to property" of the taxpayer. Unfortunately, the IRC does not include a definition of the phrase "all property and rights of property." Furthermore, it does not specify whether the property referred to is to be defined by federal or state law.

In determining the extent to which § 6321 applies to "property" and "rights to property," the Supreme Court has found that state law controls. Thus, the Court has repeatedly held that § 6321 will attach to the interest which the taxpayer has in property as defined by state law. *See United States v. Rodgers,* 461 U.S. 677, 683, 103 S.Ct. 2132, 2137, 76 L.Ed.2d 236 (1983); *United States v. Durham Lumber Co.,* 363 U.S. 522, 526, 80 S.Ct. 1282, 1284, 4 L.Ed.2d 1371 (1960); *Aquilino v. United States,* 363 U.S. 509, 513, 80 S.Ct. 1277, 1279–80, 4 L.Ed.2d 1365 (1960); and *United States v. Bess,* 357 U.S. 51, 53–54, 78 S.Ct. 1054, 1056–57, 2 L.Ed.2d 1135 (1958). *See also 21 West Lancaster Corp. v. Main Line Restaurant, Inc.,* 790 F.2d 354, 356 (3rd Cir.1986).

In addition to relying on state law for determining a taxpayer's "interest" in property, the courts have found that a taxpayer's interest is not limited to property which existed at the time that a lien is filed by the IRS, but also includes contingent or future interests and after-acquired property of the taxpayer. *See United States v. McDermott,* —— U.S. ——, ——, 113 S.Ct. 1526, 1527, 123 L.Ed.2d 128 (1993). In connection with insurance proceeds, the Court has held that, if a taxpayer has a valid state defined interest therein, then the IRS' lien attaches to the proceeds. *Bess, supra,* 357 U.S. at 54, 78

---

**2.** The Trustee's claim was separate from that of     UJB described in *CS I.*

S.Ct. at 1057; *Cf. In re Reed,* 94 B.R. 48, 52–53 (Bankr.E.D.Pa.1988) (a debtor's bankruptcy estate includes post-petition insurance proceeds, pursuant to 11 U.S.C. § 541(a)(6)). *See also* 46A C.J.S. 261 (1993); and Note, *Property Subject to the Federal Tax Lien,* 77 HARVARD L.REV. 1485, 1485–86 (1964).

It is these decisions and the broad reach of § 6321 upon which the IRS relies for support in its claim of a security interest in the Proceeds. The IRS contends that, since its lien must have attached to the Debtor's real property, the lien necessarily attached to the insurance proceeds because they represent a payment to the Debtor for the loss of that real property. Consequently, the IRS contends that the insurance proceeds represent the same property upon which the IRS' lien originally attached, but in a different form. We find that, under the instant facts and applicable state law, the IRS' position is incorrect.

In the instant matter, the court must look to Pennsylvania law, the state where the Debtor's realty and all of its assets are located, to determine the Debtor's interest in the Proceeds. Under Pennsylvania law, an interest in the Debtor's real property and an interest in the insurance proceeds arising from damages to that Property are two distinct things. Specifically, Pennsylvania courts have consistently held that insurance contracts are personal contracts of indemnity and that they protect the insured's interest in the property, but that they are not an indemnity on the property itself. *See In re Gorman's Estate,* 321 Pa. 292, 295, 184 A. 86, 87 (1936) (an insurance policy is a personal contract that exists between the insurer and insured; the building itself is not insured); *Mutual Benefit Ins. Co. v. Goschenhoppen Mut. Ins. Co.,* 392 Pa.Super. 363, 368, 572 A.2d 1275, 1277 (1990) (a fire insurance policy is a personal contract of indemnity on the insured's interest in the property and not on the property itself); *McDivitt v. Pymatuning Mut. Fire Ins. Co.,* 303 Pa.Super. 130, 135, 449 A.2d 612, 615 (1982) (a husband who owned property as a tenant by the entireties with his wife had no interest in proceeds from insurance covering a property since the contract was a personal contract between the wife and the insurer and did not pertain directly to the insured property). *See also* 43 C.J.S. 489 (1978). Consequently, in determining a third party's interest in or rights to proceeds from an insurance policy, this court must assess the parties' interest in the contract, not their interest in the property which it insures.

In *McDivitt,* the court found that the husband had no right to insurance proceeds covering entireties' property because he had no interest in the insurance policy. 303 Pa.Super. at 135, 449 A.2d at 615. The court, quoting with approval the language in *Forsyth County v. Plemmons,* 2 N.C.App. 373, 375, 163 S.E.2d 97, 99 (1968), stated

> "Under this contract the [fire] insurance company, in consideration of the premium paid to it, has assumed specified risks and has agreed to pay money to the parties insured upon the happening of certain events. *Such a policy is a personal contract, appertaining to the parties to the contract and not to the thing which is subject to the risk insurance against.* 29 Am.Jur., Insurance, § 183, p. 575. Proceeds payable thereunder when an insured loss occurs take the place of the building destroyed only in the sense of being a thing of like value, not necessarily of like ownership." (Emphasis added).

303 Pa.Super. at 135, 449 A.2d at 615.

Applying the rationale and holding of the Pennsylvania courts in *Gorman's Estate, Mutual Benefit Ins.,* and *McDivitt* to the instant matter, it is clear that the IRS' claim to the insurance proceeds attached separately to the property of the Debtor and to any rights which it may have had under the insurance policy. Therefore, any claim of the IRS against the Proceeds must be assessed separately from the IRS' claim against the property. Specifically, the IRS' interest in the Proceeds attached when the Debtor acquired its rights to same. The Debtor's right to the Proceeds matured, at the earliest, post-petition, in December, 1989, when its property was vandalized. On the other hand, the IRS' lien in the property was effective on the date that the lien was duly recorded, which occurred pre-petition.

▉ Outside of the bankruptcy context the date upon which a taxpayer's interest in property matured would be inconsequential, since the tax lien normally attaches to all after-acquired property. However, in bankruptcy, the time that an interest matures may have great significance. As noted by the Debtor, and apparently conceded by the IRS, a pre-petition tax lien does not attach to property acquired by the Debtor post-petition. *See Makoroff v. City of Lockport, N.Y.,* 916 F.2d 890, 897 (3rd Cir.1990), *cert. denied sub nom. City of Lockport, N.Y. v. United States,* 499 U.S. 983, 111 S.Ct. 1640, 113 L.Ed.2d 735 (1991); *In re Parr Meadows Racing Ass'n, Inc.,* 880 F.2d 1540, 1543 (2nd Cir.1989); and *In re Sundale Associates, Ltd.,* 23 B.R. 230, 232 (Bankr.S.D.Fla.1982). Therefore, the issue which must be resolved is whether the insurance policy is property which the Debtor owned pre-petition or post-petition.

▉ In deciding this question, this court notes that the parties' Stipulation characterizes the policy covering the loss from which the Proceeds were derived as a "renewal" of a prior policy. While this characterization may suggest that the policy was a continuation of the prior insurance policy, this description does not comport with findings made in the court of our prior decision in *CS I, supra,* 121 B.R. at 948–49. There, in our Findings of Fact, we concluded as follows:

9. On May 3, 1987, the Debtor first acquired insurance on the Facility [the Debtor's real property] from PMMI. The annual policy was renewed on the same terms on May 3, 1988.

10. In late 1988 or early 1989, the reinsurer of the policies first discovered that the Facility was vacant and that the Debtor had filed a petition of bankruptcy, and it so notified PMMI. As a result, PMMI sent a notice of non-renewal of its policy to the Debtor on March 3, 1989.

11. Nevertheless, thereafter, PMMI entered into negotiation with BCA for a new insurance policy. Ultimately, *new policy terms were negotiated. The terms of the new 1990 Policy* included an increase in premiums, a higher deductible limit, and an imposition of specific requirements relating to the security of the Facility (emphasis added).

This court's decision in *CS I* is the law of the case and must be applied to the matter herein. *See In re River Village Associates,* 161 B.R. 127, 134 (Bankr.E.D.Pa.1993); and *In re Cole,* 89 B.R. 433, 436 (Bankr.E.D.Pa. 1988) (court's previous decisions in the same case should be followed unless the prior determination is found to be "clearly erroneous" or "work a manifest injustice" upon an interested party). Since this court has determined that the insurance policy covering the loss in issue was a "new policy," contracted for post-petition, it is clear that the IRS' prepetition lien cannot attach to this post-petition property.

While the IRS relies on several cases for the proposition that its lien applies to post-petition proceeds, those cases are all distinguishable. *White v. United States,* 89–2 USTC ¶ 9622, 1989 WL 146417 (Bankr. N.D.Iowa 1989), is distinguishable because the crops at issue were planted pre-petition and the court found that, under applicable nonbankruptcy law, the proceeds from the program covering their damage attached to the crops. Slip op. at *4. As we noted at pages 147–48 *supra,* Pennsylvania law regarding the proceeds of insurance policies does not so provide.

The facts of the other two cases cited by the IRS are easily distinguished from the instant facts. Specifically, all of the proceeds recovered by the IRS in those cases were the products of property owned by the Debtor pre-petition. Thus, the insurance proceeds at issue in *In re Napier,* Bankr. No. 88–00106, 1991 WL 539038, slip op. at 1, 3 n. 1 (Bankr.E.D.Ky. Dec. 11, 1991), arose from not only a policy written pre-petition, but a loss which occurred pre-petition. Similarly, the issuance of the policy and the loss to the property at issue in *In re Key West Restaurant & Lounge, Inc.,* 54 B.R. 978, 981 (Bankr.N.D.Ill.1985), occurred pre-petition.

Accordingly, there is no authority contrary to the conclusion that, since the Proceeds in issue are post-petition property of the Debt-

or, the IRS' pre-petition lien does not attach thereto.

### D. CONCLUSION

On the basis of the foregoing, the court will enter an Order sustaining the Trustee's Objection to the secured status of the IRS' claim.

### ORDER

AND NOW, this 4th day of November, 1993, upon consideration of the Stipulation of Facts which the parties agreed would constitute the record of the proceedings on the Trustee's Objection to the Proof of Claim of the Internal Revenue Service ("the IRS") (Claim No. 6), and the Briefs submitted by the parties, it is hereby ORDERED AND DECREED as follows:

1. The Trustee's Objection to the secured status of the IRS' Claim is SUSTAINED.

2. The IRS is allowed an unsecured claim in the amount of $575,241.69, entitled to whatever priority same is entitled under the Bankruptcy Code.