In re Ernest R. LILLEY, Jr., Debtor.

Ernest R. LILLEY, Jr., Plaintiff,

v.

UNITED STATES of America, Defendant.

Bankruptcy No. 94–17688DAS.
Adv. No. 95–0096DAS.

United States Bankruptcy Court,
E.D. Pennsylvania.

May 3, 1995.

John R. Crayton, McCarthy & Crayton, Bensalem, PA, for debtor.

Shannon L. Hough, Washington, DC, for I.R.S.

Edward Sparkman, Standing Chapter 13 Trustee, Philadelphia, PA.

Frederic Baker, Asst. U.S. Trustee, Philadelphia, PA, for U.S. Trustee.

*OPINION*

DAVID A. SCHOLL, Chief Judge.

## A. INTRODUCTION

The contested matters and proceeding before us arising out of the instant case require us to revisit our holding, in *In re Gathright,* 67 B.R. 384, 387–88 (Bankr.E.D.Pa.1986), *appeal dismissed,* 71 B.R. 343 (E.D.Pa.1987), that the "good faith" requirement for confirmation of Chapter 13 plans, set forth at 11 U.S.C. § 1325(a)(3), does not include an inquiry into whether a particular debt was nondischargeable in a Chapter 7 case. Since we continue to believe that *Gathright* was correctly decided, we conclude that the instant Debtor's plan can be confirmed, even though we held that his indebtedness to the United States of America Internal Revenue Service ("the IRS") could not be discharged under 11 U.S.C. § 523(a)(1)(C) in a decision arising out of a previous Chapter 7 case, reported at 152 B.R. 715 (Bankr.E.D.Pa. 1993) (*"Lilley I"*).

## B. PROCEDURAL AND FACTUAL HISTORY

ERNEST R. LILLEY, JR. ("the Debtor") filed the instant Chapter 13 bankruptcy case on November 21, 1994. A confirmation hearing was initially scheduled for April 27, 1995. On February 17, 1995, the IRS filed (1) a motion to dismiss this case under 11 U.S.C. § 1307(c) on the ground that it was filed in bad faith ("the MTD"); and (2) an objection to confirmation based on 11 U.S.C. § 1325(a)(3), which requires that a plan be "proposed in good faith and not by any means forbidden by law; ..." ("the Objection"). In response, the Debtor, on February 22, 1995, filed an adversary proceeding naming the United States of America ("the USA") as a defendant, which sought a declaration that his indebtedness to the IRS for delinquent personal income taxes due for the tax years 1976 through 1984, totalling about $178,000, was neither a priority nor a secured debt, and was totally dischargeable under 11 U.S.C. § 1328(a) ("the Proceeding").

The MTD was listed for a hearing on March 23, 1995. After a colloquy with counsel, at which this court referenced its *Gath-*right decision as possibility controlling in favor of the Debtor, the parties agreed to continue the hearing on the MTD and the trial of the Proceeding, then scheduled on April 11, 1995, to the date of the confirmation hearing, at which the Objection would be considered, on April 27, 1995.

On the latter date, the parties appeared and orally stipulated to the entire record. They recited that the Debtor is now 66 years old, in poor health, and disabled. His only income is about $900 monthly Social Security benefits, which the IRS had levied in its entirety pre-petition. The IRS orally agreed that its indebtedness of about $178,000 was not a priority debt nor was it presently secured. With respect to the IRS's secured status, although the parties agreed that the IRS has a valid federal tax lien against all of the Debtor's property to secure its entire debt, they also agreed that the Debtor had no property of any value. The IRS indicated that its believed that it could presently initiate "transferee suits" against the Debtor's wife Sarah, but further indicated that it believed that a discharge of the Debtor's obligations to it could extinguish such rights.

Incorporated into the record by reference was the *Lilley I* Opinion; the Debtor's Schedules, listing the IRS as his only creditor; and the Debtor's Chapter 13 Plan, proposing payments of $50 monthly for 36 months.

## C. DISCUSSION

In *Lilley I,* 152 B.R. at 721–23, a proceeding arising out of the Debtor's prior Chapter 7 bankruptcy case, we concluded that the factual findings contained in two United States Tax Court ("the USTC") decisions collaterally estopped the Debtor from denying that his indebtedness to the IRS was not barred by § 523(a)(1)(C) of the Code. We should add, however, that certain elements of the rather bizarre underlying factual pattern, set forth in *Lilley I,* 152 B.R. at 717–20, raise our sympathies in favor of the Debtor. In January, 1971, the United States Secret Service ("the USSS") destroyed the Debtor's medallion and jewelry minting business by seizing its assets on the erroneous belief that the Debtor's business involved

counterfeiting. *Id.* at 717. Apparently being unable to obtain monetary redress from the USSS for these actions on its part, the Debtor decided to recoup his losses by refusing to pay his future federal income taxes. *Id.* at 717–19. The USTC, in the decisions which we held collaterally estopped the Debtor, rejected the Debtor's evidence that his conduct was justified by mental illness. *Id.* at 719–20.

The increase in the debt limits for filing Chapter 13 cases resulting from enactment of the Bankruptcy Reform Act, effective October 22, 1994, 11 U.S.C. § 109(c), made Chapter 13 relief available to the Debtor for the first time.

■ With respect to the MTD, we reiterate our statement in *In re Oglesby,* 161 B.R. 917, 923 (Bankr.E.D.Pa.1993), *aff'd,* C.A. No. 94–0617 (E.D.Pa. April 7, 1994), that

> [t]his court, in *In re Ford,* 78 B.R. 729, 733 (Bankr.E.D.Pa.1987), quoting an earlier Opinion of Chief Judge Twardowski to the same effect, *In re Flick,* 14 B.R. 912, 916 (Bankr.E.D.Pa.1981), has pointed out that there is no good faith filing requirement in Chapter 13 cases.

We recognize that other courts, including another judge of this court, have opined to the contrary. *See In re Dami,* 172 B.R. 6, 10 (Bankr.E.D.Pa.1994) (SIGMUND, J.). However, we remain unconvinced that *Ford* and *Flick* were wrongly decided on this issue.

We would observe that a similar issue arises in determining whether there is an unstated but implicit "good faith" filing requirement in Chapter 11 cases. *See In re 1606 New Hampshire Ave. Associates,* 85 B.R. 298, 308 (Bankr.E.D.Pa.1988) (this court doubts that there is such a requirement). *Cf. In re Latimer,* 82 B.R. 354, 363–64 (Bankr. E.D.Pa.1988) (this court expresses a similar doubt as to Chapter 7 cases). *Accord, In re Huckfeldt,* 39 F.3d 829, 832 (8th Cir.1994). *But see In re Marks,* 174 B.R. 37, 40–41 (E.D.Pa.1994) (good faith filing requirement in Chapter 7 cases is recognized, although a denial of dismissal on that ground is affirmed).

There is no binding precedent in this area. There is dicta in *In re Brown,* 951 F.2d 564, 571 (3d Cir.1991) (court appears to consider, as an alternative to an 11 U.S.C. § 1112(b) claim, the issue of whether the debtor filed her case in bad faith, but makes no finding on this issue), which could be read as recognizing a good faith requirement in a Chapter 11 filing. *But see* J. Flaccus, *Have Eight Circuits Shorted? Good Faith and Chapter 11 Bankruptcy Petitions,* 67 AMER. BANKR.L.J. 401 (1993) (there is no logical or historical basis to a good faith filing requirement in Chapter 11 cases despite the rulings of several Circuits to the contrary).

■ Clearly, however, "good faith" is referenced as part of a requirement for plan confirmation in § 1325(a)(3). It is to be noted, however, that § 1325(a)(3) requires, conjunctively, that a plan be not only proposed n good faith, but also that it be not forbidden by law. *See* page 810 *supra,* quoting the language of this Code section. The juxtaposition of "good faith" with "illegality" suggests that the "good faith" requirement is not be broadly applied to *legal* plan provisions.

Since it appears that a debtor must prove both a good faith plan proposed *and* that a plan is not forbidden by law, we turn to our analysis of the "good faith" plan confirmation requirement, the only aspect of § 1325(a)(3) in issue here, which appears in *Gathright.* There, we stated, 67 B.R. at 387–88, that

> we believe that "[t]he phrase 'good faith' as it appears in section 1325(a)(3) is entitled to its historical meaning" in the predecessor Bankruptcy Act, *i.e.,* as relating solely to "debtor misconduct [in the bankruptcy proceeding], such as fraudulent misrepresentations or serious nondisclosures of material facts." 5 COLLIER ON BANKRUPTCY, § 1325.04, at 1325–12, 1325–10 (15th ed. 1986). We conclude that nothing more should be read into the meaning of this Code provision.

The specific issue addressed in *Gathright* was whether a student loan indebtedness, the dischargeability of which was, under the version of the Code in effect at the time, only limited in Chapter 7 cases, could be freely discharged in a Chapter 13 case. *Accord, e.g., Education Assistance Corp. v. Zellner,*

827 F.2d 1222 (8th Cir.1987). Collier has not changed, in later revisions of its text, its choice of language quoted from *Gathright, supra,* about the scope of the § 1325(a)(3) "good faith" requirement. *See* 5 COLLIER ON BANKRUPTCY, ¶ 1325.04, at 1325–21 to 1325–22 (15th ed. 1994). Collier has also thusly expressed the Congressional policy that debts which are nondischargeable in Chapter 7 cases may well be dischargeable in Chapter 13 cases, *id.,* ¶ 1328.01, at 1328–8:

> To date, most challenges to these broad discharge provisions [in § 1328(a) ] have concerned whether the presence of a debt which would not be dischargeable under chapter 7 is evidence of a lack of good faith in proposing a chapter 13 plan, or results in less being paid to those creditors under chapter 13 than would have been realized under chapter 7, contrary to subsection 1325(a)(4). Generally, the courts considering such issues have concluded that the presence of debts not dischargeable in chapter 7 does not dictate a finding that the plan has not been filed in good faith, even if little or nothing is paid on such debts in a chapter 13 case, unless other factors indicating a lack of good faith are also present. Rather, the dischargeability of debts in chapter 13 that are not dischargeable in chapter 7 represents a policy judgment that it is preferable for debtors to attempt to pay such debts to the best of their abilities over three years rather than for those debtors to have those debts hanging over their heads indefinitely, perhaps for the rest of their lives (footnotes omitted).

Congress has expressed its dissatisfaction with the narrow result in *Gathright* and *Zellner* as to student loan debts by amending § 1328(a) to limit student loan discharges in Chapter 13 cases to the same terms as in Chapter 7 cases. We also note that Congress enacted former 11 U.S.C. § 1328(a)(3) to overrule the holding that criminal restitution was dischargeable in Chapter 13 cases in *Davenport v. Department of Public Welfare,* 495 U.S. 552, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990). However, Congress has left the broad discharge provisions of Chapter 13 otherwise intact, indicating its intention to have the broad Chapter 13 discharge include other indebtednesses not dischargeable in Chapter 7 cases. This court therefore finds it inconsistent with Congressional intent to suggest that the fact that a debt is nondischargeable in a Chapter 7 case is in itself a ground for denying confirmation of a Chapter 13 plan.

Similarly, this court is unable to identify any controlling legal precedent which suggests that *Gathright* has been overruled. However, it is true that two other judges of this court have addressed the § 1325(a)(3) requirement and have suggested at least a slightly broader interpretation of "good faith" in this context than did *Gathright.*

Shortly after *Gathright,* Judge Fox of this court, in *In re March,* 83 B.R. 270 (Bankr. E.D.Pa.1988), considered the contention of an unsecured creditor that discharge of its claim, which had been reduced to judgment but was apparently not argued to be nondischargeable in a Chapter 7 case, violated § 1325(a)(3). Since the debtor was current on his secured debts and owed no other unsecured debts, *id.* at 272, it was apparent that the sole purpose of the debtor's case was to discharge the objecting judgment creditor's claim. Nevertheless confirming the plan, Judge Fox, *id.* at 275, formulated the following § 1325(a)(3) criteria:

> the scope of good faith inquiry must be limited to those factors which address (1) whether the debtor has deliberately misinformed the court of facts material to confirmation of the plan; (2) whether the debtor intends to effectuate the plan as proposed; and (3) whether the proposed plan is for a purpose not permitted under the Bankruptcy Code. *See Zellner* [, *supra* ]; *Barnes* [*v. Whelan,* 689 F.2d 193 (D.C.Cir.1982), a decision relied upon in *Gathright* ].

These criteria are similar to these formulated in *Gathright,* but contain the notable appendage of an analysis of the "purpose" of a Chapter 13 case. This appendage appears to arise from Judge Fox's prior decisions recognizing a similar criterion in an analysis of whether a Chapter 11 case was filed in good faith in *In re Clinton Centrifuge, Inc.,* 72 B.R. 900, 905 (Bankr.E.D.Pa.1987).

Judge Fox reiterates his *Clinton Centrifuge* position in *In re Roxy Real Estate Co.,* 170 B.R. 571, 573–74 (Bankr.E.D.Pa.1993). However, as is noted in our discussion at page 811 *supra,* we doubt the existence of an implicit "good faith" filing requirement in a Chapter 11 case.

Therefore, we cannot agree that the appendage of this third good faith requirement is appropriate. An illustration of why appears in the other § 1325(a)(3) "good faith" decision arising in this district, Judge Raslavich's recent decision in *In re Norwood,* 178 B.R. 683 (Bankr.E.D.Pa.1995). In that case, Judge Raslavich, *id.,* 178 B.R. at 691, adopts the following three-part "good faith" criteria, first articulated in *Zellner, supra,* 827 F.2d at 1227:

> a) whether the debtor has stated his debts and expenses accurately; b) whether he has made any fraudulent misrepresentations to mislead the bankruptcy court; c) or whether he has unfairly manipulated the Bankruptcy Code. [*Zellner,* ] *Id.; In re Carsrud,* 161 B.R. 246, 251 (Bankr. D.S.D.1993); *In re March, supra,* 83 B.R. at 275; *In re Gathright,* [*supra* ].

While we disclaim the support of this criteria, or at least the last of them, by *Gathright,* we agree that this formulation is quite consistent with that set forth in *March,* as well as in *Carsrud, supra,* (the notorious case of a debtor who was subject to a civil judgment for raping and otherwise harassing his natural sister), and such cases as *In re LaMaire,* 898 F.2d 1346 (8th Cir.1990) (en banc) (court decides, 6–3, that a debtor who intentionally shot the creditor-victim was not proceeding in good faith). As the *Norwood, Carsrud,* and *LaMaire* results indicate, it is quite easy to equate "unfair manipulation of the Bankruptcy Code" with prohibiting a Chapter 13 discharge of an unsavory obligation which is nondischargeable in a Chapter 7 case. *But cf. In re Harlan,* 179 B.R. 133 (Bankr. W.D.Ark.1995) (court applies *Zellner* test, but concludes that a debtor-former bookkeeper convicted of embezzlement can discharge her debt to her former employer in Chapter 13).

We therefore reaffirm our formulation of the § 1325(a)(3) criteria set forth in *Gath-*right. While it is not inevitable that courts will widen the "improper purpose" and "unfair manipulation" criterion to suck in all debts which would be nondischargeable in a Chapter 7 case, as indicated in the *March* and *Harlan* results, the temptation to do so appears to us to be very great, and this leads to inconsistent and unpredictable results. A bright-line approach, consistent with Congressional language and apparent Congressional intent, appears to provide a far better, as well as a more accurate, guidepoint to litigants.

■ Applying the *Gathright* criteria to the instant facts makes the result extremely clear. In oral argument on April 27, 1995, the IRS's vigorous yet realistic counsel, who successfully litigated *Lilley I,* agreed that the Debtor was not guilty of misconduct in the course of the instant bankruptcy proceeding. His only debt, to the IRS, and the information contained in his Schedules, was admittedly stated accurately. No fraudulent misrepresentations of the Debtor to this court were alleged. That is all that the *Gathright* test obliges the Debtor to do to satisfy the § 1325(a)(3) requirement.

Although the foregoing analysis, in our view, suffices to resolve the Objection in favor of the Debtor, two other observations are appropriate. First is a consideration of the practical effect of our decision on the parties before us in this case. We find that the only real impact of our decision is to allow the Debtor to retain his Social Security benefits of $900 for the rest of his life. The Debtor admittedly has no other assets of any value. The broad IRS tax lien, *see, e.g., In re CS Associates,* 161 B.R. 144, 146–47 (Bankr.E.D.Pa.1993), *aff'd,* C.A. No. 93–6623 (E.D.Pa. June 21, 1994), cannot be avoided by any bankruptcy discharge and would attach to any property which the Debtor might fortuitously acquire in the future. The IRS will have over two years to pursue Sarah Lilley on its "transferee suits" irrespective of the Debtor's ultimate discharge of its obligation, because no discharge could be granted until the 36 months of plan payments are completed. The IRS will of course receive all of the admittedly modest distributions due to creditors under the plan. It will therefore

receive all of the Debtor's excess disposable income. The Debtor will merely retain his $900 monthly Social Security benefits on which to live. This is not an inequitable result.

Second, even if we adopted the "totality of the circumstances" test championed in such cases as *In re Love,* 957 F.2d 1350, 1354–62 (7th Cir.1992), cited by the IRS, we doubt that the result here would have been different. The *Love* court, for example, emphasized that the debtor's failure to make accurate disclosures of available insurance proceeds and of his income in the Chapter 13 case itself were the primary reasons for denial of his discharge. *Id.* at 1358. These are the very issues on which the *Gathright* test focuses, which probably would have led us to the same result as that reached in *Love* under the facts of that case. However, no such factors are in evidence here, making a different result appropriate. Although we found, in *Lilley I,* 152 B.R. at 722, that the debtor's actions were found, by the USTC, to be likened to those of a tax protestor, there is, in fact, a world of difference between a classic tax protestor and the Debtor. The Debtor's actions were motivated by at least a certain degree of mental illness and a not inequitable sense that he was entitled to restitution from the federal government for his victimization by the USSS. A classic tax protestor such as the *Love* debtor, *see* 957 F.2d at 1357–58, not having had a legitimate business activity destroyed by an erroneous governmental action, simply refuses to pay income taxes as a matter of (misguided) principles. Therefore, it is probable that the Debtor would have prevailed in obtaining confirmation of his plan even had the *Love* criteria been applied to the instant facts.

Hence, we conclude that the IRS's Objections to confirmation, like its MTD, must be denied. The Debtor's plan will therefore be confirmed.

The IRS did not contest the reclassification of its claim, as sought in the Proceeding. It is consistent with our ruling on the Objection to conclude that the Debtor's indebtedness to the IRS is potentially dischargeable, although it is premature to make such a declaration prior to the Debtor's completion of his plan payments and the ripening of his eligibility for discharge. *See In re Johnson–Allen,* 871 F.2d 421, 423 (3d Cir.1989), *aff'd sub nom. Davenport, supra.*

### D. CONCLUSION

An Order consistent with the conclusions reached in the foregoing Discussion will be entered.