In re Ernest R. LILLEY, Jr., Debtor.

Appellant: INTERNAL REVENUE
SERVICE, Defendant.

No. 95–3573.
Bankruptcy No. 94–17688DAS.

United States District Court,
E.D. Pennsylvania.

Aug. 21, 1995.

John R. Crayton, McCarthy & Crayton, Bensalem, PA, for debtor Ernest R. Lilley, Jr.

Shannon L. Hough, Tax Div., U.S. Dept. of Justice, Washington, DC, for appellant I.R.S.

Edward Sparkman, Trustee, Philadelphia, PA.

## MEMORANDUM

GILES, District Judge.

The Internal Revenue Service ("IRS") appeals from the May 3, 1995, Memorandum and Order of Chief Bankruptcy Judge David A. Scholl denying the IRS' motion to dismiss and confirming Ernest Lilley's Chapter 13 Plan ("the Plan").[1]

## I. FACTUAL BACKGROUND

The underlying facts of this appeal are in all material aspects uncontroverted.

In January, 1971, the United States Secret Service ("USSS") seized the assets of Ernest R. Lilley's medallion and jewelry minting business on the erroneous belief that his business involved counterfeiting. *In re Lilley*, 152 B.R. 715, 717 (Bankr.E.D.Pa.1993) ("Lilley III"). Shortly after the return of his machinery and supplies, the business failed and Lilley attributed his loss to the USSS. Apparently being unable to obtain monetary redress from the USSS for these actions, Lilley decided to recoup his losses by refus-

---

1. The IRS appeals the Bankruptcy Court's decision in *In re Lilley*, 181 B.R. 809 (Bankr.E.D.Pa. 1995).

ing to pay his future federal income taxes. *Id.* at 717–719. He amassed $178,000 in delinquent tax debt and additions from 1976 to 1984. (Debtor's Chapter 13 Petition & Schedules at pp. 10 and 21 out of 23).

On November 1, 1989, Lilley petitioned the Tax Court in an effort to be released from the outstanding tax obligation.[2] Lilley argued that his mental illness was "reasonable cause" for his failure to file Federal income tax returns for 1974, 1975 and 1980 through 1984.[3] Lilley also contended that he should be absolved of liability for the period 1980 through 1984 because he reasonably relied on the advice of his tax attorney not to file returns during a pending criminal investigation.[4] Additionally, Lilley argued that he was entitled to a dependency exemption for his daughter in 1980 and 1981. *Lilley v. Commissioner,* 1989 WL 129135 at 3–5 (U.S.Tax Ct.) ("Lilley I").

The Tax Court rejected Lilley's contention that his conduct was justified by mental illness. *Id.* at 7. Instead, the Tax Court determined that Lilley was not entitled to relief because he acted with willful neglect, not reasonable cause, in failing to file Federal income tax returns for 1980 through 1984 and acted negligently with intentional disregard of the rules and regulations so as to warrant imposition of additions to tax for 1974 through 1984. *Lilley I,* 1989 WL 129135 at 8. Lilley was, however, determined to be entitled to an exemption for his daughter for 1980 and 1981. *Id.* at 9.

On February 27, 1990 Lilley filed a timely motion for reconsideration of the Tax Court's opinion. The court denied the motion for reconsideration concluding that Lilley had not established sufficient grounds for that

relief. *Lilley v. Commissioner,* 1990 WL 16904 at 3 (U.S.Tax Ct.) ("Lilley II").

On April 17, 1992, Lilley filed a Chapter 7 bankruptcy petition in the Eastern District of Pennsylvania seeking discharge of his tax debt. The IRS was the sole creditor in that proceeding.[5] The IRS did not file a proof of claim or otherwise participate, and the court issued an Order of Discharge on July 24, 1992. *Lilley III,* 152 B.R. at 715.

On November 4, 1992 Lilley filed an emergency application to reopen the Chapter 7 bankruptcy case and to stay a post-petition IRS levy on his Social Security disability benefits. *Id.* at 716. On November 12, 1992, the bankruptcy court approved a stipulation between Lilley and the IRS to reopen the case to determine the dischargeability of Lilley's tax liabilities. *Id.*

On November 16, 1992, Lilley filed an adversary claim seeking a judgment that his tax liabilities for the years 1975 through 1984 were dischargeable. On April 1, 1993, the bankruptcy court found that Lilley had willfully attempted to evade or defeat his tax obligation and that 11 U.S.C. § 523(a)(1)(C)[6] precluded discharge of the debt. *Lilley III,* 152 B.R. at 723.

Thereafter, the Bankruptcy Reform Act, as enacted, increased the unsecured debt limits to $250,000 for cases filed after October 22, 1994. 11 U.S.C. § 109(e). This change made Chapter 13 available to Lilley for the first time. He filed a Chapter 13 petition on November 21, 1994, the determination from which the IRS now appeals.

At the time of his Chapter 13 bankruptcy filing, Lilley was 66 years old, in poor health,

---

**2.** The tax court proceedings referenced are *Lilley v. Commissioner,* 1989 WL 129135 (U.S.Tax Ct.) and *Lilley v. Commissioner,* 1990 WL 16904 (U.S.Tax Ct.).

**3.** Reasonable cause requires a taxpayer to demonstrate that he exercised ordinary business care and prudence and was nevertheless unable to file the returns in the prescribed time. Sec. 301.6651–1(c)(1) Proced. & Admin.Regs.

**4.** The criminal investigation Lilley alluded to led to his trial and conviction on criminal charges for willful failure to file Federal income tax returns for the taxable years 1976 through 1979.

**5.** The record shows that Lilley filed a Chapter 7 petition in 1979 in which he unsuccessfully invoked the doctrine of *res judicata. Zanni v. Lilley,* 8 B.R. 561 (Bankr.E.D.Pa.1981).

**6.** 11 U.S.C. § 523 in pertinent part states "(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—(1) for a tax or customs duty—.... (C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax". 11 U.S.C. § 523(a)(1)(C).

and disabled. His only income was Social Security benefits of $904.00 monthly, upon which the IRS had levied in its entirety. *In re Lilley*, 181 B.R. 809, 810 (Bankr.E.D.Pa. 1995) ("Lilley IV").

During the Chapter 13 proceedings the IRS agreed that Lilley's tax indebtedness [7] was not a priority debt and not secured at the time of the Chapter 13 filing. Although the IRS had a valid lien against all of Lilley's property to secure the tax debt, Lilley had no property of value. Lilley's plan proposed payments of $50.00 per month [8] for 36 months, with the IRS as the sole creditor. (*See* Lilley IV, *Record on Appeal at § 5–Debtor's Chapter 13 Petition & Schedules at p. 23 of 23*).

On February 17, 1995, the IRS filed a motion to dismiss asserting that Lilley's Chapter 13 petition was filed in bad faith in violation of 11 U.S.C. § 1307(c). The IRS also objected to confirmation of Lilley's plan asserting that the plan was proposed in bad faith in violation of 11 U.S.C. § 1325(a)(3), which requires that a debtor's plan be "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1325(a)(3).

In response, Lilley filed an adversary proceeding seeking a declaration that his indebtedness to the IRS for delinquent personal income taxes for the tax years 1976 through 1984, totalling $178,000, was neither a priority nor a secured debt and was totally dischargeable under 11 U.S.C. § 1328(a). [9] *Lilley IV*, 181 B.R. at 810.

On May 3, 1995, the bankruptcy court issued the opinion and order upon which this appeal is based. It held that there was no good faith filing requirement in Chapter 13 cases and denied the IRS' motion to dismiss.

*Id.* at 811. Additionally, the court determined that Lilley was not in violation of the good faith or illegality requirement for plan confirmation found in § 1325(a)(3). Accordingly, the court denied the IRS' objections to confirmation and confirmed Lilley's Chapter 13 plan. *Id.* at 5.

## II. DISCUSSION

### A. Standard of review.

 The standard of review is well settled. In reviewing the bankruptcy courts orders, the district courts sit as an appellate court having jurisdiction to hear final judgments, orders and decrees of bankruptcy judges. 28 U.S.C. § 158(a). The bankruptcy court's legal conclusions are subject to plenary review, and the district court may not set aside a bankruptcy court's findings of fact unless they are clearly erroneous. *In re Brown v. Pennsylvania State Employees Credit Union*, 851 F.2d 81, 84 (3rd Cir.1988).

### B. A debtor's Chapter 13 bankruptcy petition may be dismissed "for cause" pursuant to 11 U.S.C. 1307(c).

 The bankruptcy court's conclusions of law are subject to *de novo* review on appeal. *In re Love*, 957 F.2d 1350, 1354 (7th Cir. 1992) (citations omitted). The "court's conclusions with regard to the legal standard applicable to good faith determinations are questions of law reviewed under the *de novo* standard." *Id.* Therefore, whether Lilley's Chapter 13 petition should have been dismissed for cause in accordance with 11 U.S.C. 1307(c) is a question of law and our review is plenary.

---

7. Lilley's Schedules show $178,000.00 in liabilities (exclusively to the IRS) and $0.00 assets. *See Lilley IV*, 181 B.R. 809 Record on Appeal § 5 Schedule A–Real Property, B–Personal Property, F–Creditors Holding Unsecured Nonpriority Claims.

8. The Debtor's Schedule indicated that his combined monthly income was equal to $904.00 (social security disability). His monthly expenditures were reported as $171.00 for food, $50.00 for clothing, $100.00 for medical and dental, $50.00 for transportation, $133.00 for health insurance, $100.00 for payments for support of additional dependents not living at his home, and $250.00 for contributions to wife's household expenses. The IRS did not challenge the validity of Lilley's expenses. 181 B.R. 809 Record on Appeal § 5 Schedule I—Current Income of Individual Debtor(s), J—Current Expenditures of Individual Debtor.

9. 11 U.S.C. § 1328(a) governs Chapter 13 discharge and outlines the procedure for debt discharge after the debtor completes all of the payments under the terms of the plan. 11 U.S.C. § 1328(a).

Section 1307(c) provides that the bankruptcy court may dismiss a case under Chapter 13 "for cause", including

(1) unreasonable delay by the debtor that is prejudicial to creditors;

(2) nonpayment of any fees and charges required under chapter 123 of title 28;

(3) failure to file a plan timely under sections 1321 of this title;

(4) failure to commence making timely payments under section 1326 of this title;

(5) denial of confirmation of a plan under section 1325 of this title and denial of a request made for additional time for filing another plan or modification of a plan;

(6) material default by the debtor with respect to a term of a confirmed plan;

(7) revocation of the order of confirmation under section 1330 of this title, and denial of confirmation of a modified plan under section 1329 of this title;

(8) termination of a confirmed plan by reason of the occurrence of a condition specified in the plan other than completion of payments under the plan;

(9) only on request of the United States trustee, failure of the debtor to file, within fifteen days, or such additional time as the court may allow, after the filing of the petition commencing such case, the information required by paragraph (1) of section 521; or

(10) only on the request of the United States trustee, failure to timely file the information required by paragraph (2) of section 521.

11 U.S.C. § 1307(c).

■■■■ We agree with the IRS' contention that the Code's use of the word "including" in § 1307(c) indicates that the list is not exhaustive, and a court's determination of "cause" is not limited to only those reasons stated in the Code. *See* 11 U.S.C. § 102(3); *P.C. Pfeiffer Co. v. Ford,* 444 U.S. 69, 77 n. 7, 100 S.Ct. 328, 334 n. 7, 62 L.Ed.2d 225 (1979). Additionally, given that the Code uses the word "may" in § 1307(c), we find that the court's determination whether dismissal is appropriate is discretionary.

1. *Implicit "good faith" filing requirements and Chapter 13.*

The IRS argues here, as it did in the bankruptcy proceeding, that there is an unstated implicit "good faith" filing requirement in Chapter 13. The IRS suggests that Lilley's history of willfully failing to file tax returns, coupled with several unsuccessful attempts to discharge that debt, amount to bad faith and abuse of the Bankruptcy Code which may be cause for dismissal under § 1307(c). (IRS Brief at 8–9).

In rejecting this argument the bankruptcy court referenced, without elaboration, its opinion in *In re Oglesby,* 161 B.R. 917, 923 (Bankr.E.D.Pa.1993), *remand from* 158 B.R. 602 (E.D.Pa.1993), for the proposition that there is no good faith filing requirement in Chapter 13 cases.[10] *Lilley IV,* 181 B.R. at 811.

---

**10.** This court recognizes that although not specifically found in the Bankruptcy Code, there is a growing body of case law permitting dismissal of Chapter 11 or 13 petitions on the basis of "bad faith" filing. The Third Circuit has not ruled on this particular issue. *Cf. In re Brown,* 951 F.2d 564 (3rd Cir.1991) (alluding to, but not finding, a good faith filing requirement under Chapter 11). District courts in this jurisdiction are split as to whether an implicit good faith filing requirement exists in Chapter 13, 11, or 7 cases. *Compare In re Ford,* 78 B.R. 729, 733 (Bankr.E.D.Pa.1987 and *In re Flick,* 14 B.R. 912, 916 (Bankr.E.D.Pa. 1981) (finding no good faith filing requirement in Chapter 13 cases), *with In re Dami,* 172 B.R. 6, 10 (Bankr.E.D.Pa.1994) (finding a good faith filing requirement in Chapter 13 case; *See also In re 1606 New Hampshire Ave. Assoc.,* 85 B.R. 298, 308 (Bankr.E.D.Pa.1988) (doubting good faith filing requirement in Chapter 11 proceeding); *Cf. In re Latimer,* 82 B.R. 354, 363, 364 (Bankr.

E.D.Pa.1988) (similar doubt as to Chapter 7 cases); *But see In re Marks,* 174 B.R. 37, 40–41 (Bankr.E.D.Pa.1994) *and In re Bingham,* 68 B.R. 933, 935 (Bankr.M.D.Pa.1987) (finding good faith filing requirement in Chapter 7 cases).

The circuits which have addressed the issue likewise are not uniform in their decisions on the matter. *See, e.g., In re Eisen,* 14 F.3d 469, 470 (9th Cir.1994) (good faith filing requirement implicit in Chapter 13); *In re Love,* 957 F.2d 1350, 1354 (7th Cir.1992) (same); *In re Gier,* 986 F.2d 1326, 1329 (10th Cir.1993) (same, relying on *Love* ). *Cf. In re Huckfeldt,* 39 F.3d 829, 832 (8th Cir.1994) (proper inquiry in Chapter 7 case on motion to dismiss petition is "cause", not "good" or "bad" faith).

Because our determination rests on different grounds, we do not attempt to resolve whether there is an implicit "good faith" filing requirement in Chapter 13 proceedings.

2. *Lilley's willful and deliberate non-payment of Federal income taxes constitutes "cause" for dismissal of his Chapter 13 petition.*

■ After review of the factual record, we find that Lilley acted willfully and with intentional disregard of the tax laws in his multiple attempts to evade satisfying his Federal income tax debts.

The record evidence, developed in *Lilley I,* incorporated in *Lilley III,* and considered in *Lilley IV,* shows that Lilley understood his obligation to file annual income tax returns and deliberately chose not to do so. Lilley was advised by the Treasury Department, *Lilley III,* 152 B.R. at 717–19, as well as private counsel, *id.,* that he had no right to recover against the United States for his loss and that he should file annual returns. Thus, his contention that he did not pay taxes while attempting to resolve an ancillary dispute with the Government lacks merit. *Lilley III,* 152 B.R. at 717. Further, his actions to avoid paying the debt contradict his assertion that he was laboring under some mental deficiency which permitted him to function daily and only affected his ability to file a tax return. *Id.* at 719. Lilley wrote Senator Hugh Scott suggesting that he had broken the tax laws and requesting an audience with the Government regarding settlement. *Lilley III,* 152 B.R. at 717. Additionally, he misrepresented his potential for incurring federal tax liabilities in 1974, 1977 and 1979 by filing false withholding statements (Form W–4E) with his employers. *Id.* at 718. Even while on probation, Lilley continued to flout his obligations. Although ordered to file all his back tax returns as a condition of his probation, Lilley refused to file any tax return until threatened with a probation violation. *Lilley III,* 152 B.R. at 719. He filed those returns declaring an "antitrust violation" deduction through which he attempted to once again set-off his losses against the Government, despite advice from counsel that such a deduction would be disallowed. *Id.*

From the record, we conclude that Lilley's malfeasance caused his tax debt to grow over a period of 19 years to $178,000. He had no reasonable basis from which to believe that he was entitled, as a matter of law, to a credit or "set-off" for any loss from the Government. Accordingly, we find that he attempted to defraud the Government by intentionally evading payment of his Federal income taxes and such action constitutes cause for dismissal of his Chapter 13 bankruptcy petition pursuant to 11 U.S.C. § 1307(c).

C. *A debtor's Chapter 13 plan must be proposed in good faith and not forbidden by law.*

■ The bankruptcy court's finding of "good faith" is a factual finding to be evaluated under the clearly erroneous standard of review. *In re Love,* 957 F.2d 1350, 1354 (7th Cir.1992) (citations omitted). In determining whether the bankruptcy court's finding is clearly erroneous, we must give great deference to the bankruptcy court as the trier of fact. *Id.* If the bankruptcy court's account of the evidence is plausible in light of the record viewed in its entirety, the district court may not reverse even if convinced that it would have weighed the evidence differently from the trier of fact. *Love,* 957 F.2d at 1354. Reversal under the clearly erroneous standard is only warranted if it is clear to the reviewing court that the bankruptcy court made a mistake. *Id.*

■ Section 1325(a)(3) states that the bankruptcy court shall confirm a debtor's plan if "the plan has been proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1325(a)(3). The Bankruptcy Code is silent as to which party bears the burden of proof on motions to dismiss. However, the Third Circuit has held that the burden to show that a plan was proposed in good faith and not for an illegal purpose, once challenged, rests with the debtor. *In re Holi–Penn, Inc.,* 535 F.2d 841, 844 (3d Cir. 1976) (Chapter 10).

1. *The bankruptcy court's finding that Lilley proposed his plan in "good faith" is not clearly erroneous.*

■ The IRS argues that the bankruptcy court unreasonably restricted the "good faith" inquiry for proposed plans under

§ 1325(a)(3) to misconduct in the bankruptcy proceeding such as fraudulent misrepresentations or serious non-disclosure of material facts. (IRS Brief at 10). Because the court declined to consider whether the plan was proposed for a purpose not permitted under the Bankruptcy Code, see *In re March*, 83 B.R. 270 (Bankr.E.D.Pa.1988), or whether a debtor has unfairly manipulated the Bankruptcy Code, see *In re Norwood*, 178 B.R. 683 (Bankr.E.D.Pa.1995), the IRS contends that the bankruptcy court's finding that Lilley proposed his plan in "good faith" is clearly erroneous. (*See* IRS Brief at 11).

The bankruptcy court relied on its prior opinion in *In re Gathright*, 67 B.R. 384, 387–88 (Bankr.E.D.Pa.1986), *appeal dismissed*, 71 B.R. 343 (E.D.Pa.1987), to support its conclusion that the "good faith" plan confirmation requirement is not to be too broadly applied to the "legal plan provisions". *See Lilley IV*, 181 B.R. at 809. In *Gathright*, a debtor sought to discharge obligations under Chapter 13 which otherwise were not dischargeable under Chapter 7. *Gathright*, 67 B.R. at 385. The court opined that the purpose of Chapter 13 was to provide a debtor with a "fresh start" leaving little room for "moralizing" by the court as to the circumstances which may have brought the debtor to file for bankruptcy protection. *Id.* at 387. Thus, the "good faith" inquiry was limited to its historic meaning as proscribed by the predecessor Bankruptcy Act, that is, relating to misconduct in the bankruptcy proceeding itself. *Gathright*, 67 B.R. at 388. The court rejected a laundry-list or "totality of the circumstances" approach regarding which factors should be taken into consideration in determining "good faith", in part because such a list brings into consideration items provided for in separate provisions of the Code.[11] *Id.* at 389.

Applying *Gathright* to Lilley's Chapter 13 proposal, the court found, and the IRS agreed, that Lilley was "not guilty of misconduct in the course of the Chapter 13 proceeding." *Lilley IV*, 181 B.R. at 813. The record shows that the IRS was the sole creditor in this action. Lilley's Schedules showed an outstanding tax indebtedness of over $178,-000 and zero assets. His sole income was $904 monthly in social security benefits. (*Lilley IV*, Record of Appeal at § 5, Debtor's Petition and & Schedules). The IRS did not, and has not, asserted that Lilley's representations were inaccurate, understated, or fraudulent. *Id.* Indeed it appears that his plan makes full and fair disclosure of his financial affairs. Therefore, under *Gathright* the bankruptcy court's finding of good faith is supported by the record and cannot be deemed clearly erroneous.

However, the court's analysis did not end with *Gathright*. Recognizing that other courts in this jurisdiction have adopted the "totality of the circumstances" test announced in *In re Love*, 957 F.2d 1350, 1354–62 (7th Cir.1992), the court determined that even under a "totality of circumstances" test Lilley's plan would have been confirmed. *Lilley IV*, 181 B.R. at 814. The court distinguished Lilley from the tax protester who had been denied relief in *Love*. There, the *Love* debtor had refused to pay taxes as a matter of "misguided" principle. Here, the court found that Lilley's debt arose in part from a mental illness and from a sincere belief, although obviously, a mistaken one, that he was entitled to restitution for his victimization by the USSS. *Id.*

Sitting as an appellate court, we cannot say that this fact finding is so inconsistent with the proffered evidence so as to render the court's determination clearly erroneous.

11. Although not overruled, *Gathright's* limited analysis has been called into question. *See In re Oglesby*, 158 B.R. 602, 607 (E.D.Pa.1993) (suggesting non-exhaustive list of inquiries to establish "good faith" and advising court not to lose sight of "totality of circumstances" surrounding the filing). To the extent the IRS questions whether *Gathright* is the proper test for a "good faith" determination under § 1325(a)(3), our review is plenary since this inquiry presents an issue of law. The Third Circuit has not ad-dressed this issue directly and *Gathright* remains good law in this jurisdiction. However, the court notes, and follows, the trend toward application of a "totality of circumstances" approach to a § 1325(a)(3) determination, with no established set of good faith factors. Since it appears that Chief Judge Scholl applied both tests to Lilley's proposed plan, we do not reverse on this issue and instead will review the bankruptcy court's good faith determination under the clearly erroneous standard only.

■ The IRS next argues that the bankruptcy court's confirmation of the plan was clear error because it did not expressly consider Lilley's abuse of the Bankruptcy Code as grounds for denial. During the bankruptcy proceeding, the IRS objected to the plan confirmation, in part, because Lilley sought discharge unsuccessfully under Chapter 7 and was now attempting that which he could not accomplish under Chapter 7, by filing for Chapter 13 protection. This argument implies that multiple attempts to discharge a tax debt in bankruptcy is an abuse of process and is indicative of *per se* bad faith.

The bankruptcy court found, and we agree, that seeking discharge under Chapter 13 for an obligation otherwise non-dischargeable under Chapter 7, is not grounds to find that a plan has been proposed in bad faith. *See, e.g., In re Metz*, 820 F.2d 1495, 1497 (9th Cir.1987).

Section 109(g) of Chapter 11 prohibits multiple filings, also known as serial filings, in specific circumstances only. *See, e.g.,* 11 U.S.C. § 109(g) (no filings within 180 days of dismissal); § 727(a)(8) (no Chapter 7 filing within six years of a Chapter 7 or Chapter 11 filing); § 727(a)(9) (limitation on Chapter 7 filing within six years of Chapter 12 or Chapter 13 filing). The absence of a similar prohibition against the serial filing of a Chapter 13 petition following a Chapter 7 petition, combined with the evident care with which Congress fashioned the express prohibitions, convinces us that Congress did not intend to foreclose categorically the benefit of Chapter 13 reorganization to a debtor who previously has filed unsuccessfully for Chapter 7 relief. *See Johnson v. Home State Bank*, 501 U.S. 78, 87, 111 S.Ct. 2150, 2156, 115 L.Ed.2d 66 (1993) (citing *United States v. Smith*, 499 U.S. 160, 167, 111 S.Ct. 1180, 1185, 113 L.Ed.2d 134 (1991) (expressly enumerated exceptions presumed to be exclusive)).

Although the debtor's motive in invoking Chapter 13 to obtain discharge of a previously non-dischargeable debt, as well as the circumstances under which that debt arose, may be factors to consider as part of the totality of the circumstances, they cannot, as a matter of law, suffice to show bad faith. *See In re Chaffin*, 816 F.2d 1070, 1074 (5th Cir.1987). In *Chaffin*, the debtor converted from Chapter 7 to Chapter 13 after a debt was found non-dischargeable. The court held it was not bad faith justifying denial of confirmation that one converts after things turn out badly in Chapter 7, for Congress knows perfectly well that one could get relief from non-dischargeable debts in Chapter 13. *Id.* at 1074.

Similarly, Lilley presented a Chapter 13 plan to be confirmed after filing a Chapter 7 petition. This was not an abuse, but rather was a taking advantage of an available option under the Bankruptcy Code. Congress has not chosen to exclude tax debts from discharge in Chapter 13 Bankruptcy. Therefore, we do not conclude that a debtor's utilization of the Bankruptcy Code as a vehicle to discharge a tax debt indicates bad faith.

■ Additionally, most circuit courts have held that the quantity of payment proposed, alone, does not constitute lack of "good faith" permitting denial of confirmation of a plan under § 1325(a)(3). *See In re Hines*, 723 F.2d 333 (3d Cir.1983); *In re Kitchens*, 702 F.2d 885, 887–89 (11th Cir. 1983) (per curiam); *In re Estus*, 695 F.2d 311, 316 (8th Cir.1982); *In re Goeb*, 675 F.2d 1386, 1388–89 (9th Cir.1982). The IRS' contention that the proposed nominal monthly payment of $50 evidences bad faith is meritless, particularly where Lilley's Schedule shows $904 in income and $854 in expenses monthly. (*Lilley IV*, Record on Appeal, Debtor's Petition & Schedule § 5).

Therefore, neither Lilley's filing for Chapter 13 relief following Chapter 7 nor the proposed monthly payment, based on the record evidence and applicable law, clearly constitutes a lack of "good faith" to prevent confirmation of his plan under § 1325(a)(3). Implicit in the bankruptcy court's decision to confirm Lilley's plan is its determination that Lilley did not unfairly manipulate the Bankruptcy Code or utilize it for an untoward purpose. *See Love*, 957 F.2d at 1355 (court refuses to adopt specific test or definition of "good faith", and determination, therefore, is a fact inquiry better left to the discretion of the bankruptcy court looking at a totality of the circumstances); *In re Oglesby*, 158 B.R.

at 607. On that basis, we affirm the bankruptcy court's finding that Lilley's plan was proposed in good faith.

An appropriate order follows.

### ORDER

AND NOW this 17th day of August, 1995, upon consideration of the appellant's brief and the appellee's brief, it is hereby ORDERED that the bankruptcy court's Memorandum and Order of May 3, 1995, is REVERSED, in part, and AFFIRMED, in part.

IT IS FURTHER ORDERED that,

1. Internal Revenue Service's Motion to Dismiss is GRANTED; and

2. Ernest R. Lilley's Chapter 13 bankruptcy case is DISMISSED FOR CAUSE WITH PREJUDICE.