BIANCO, J.T.C.
This is the court’s determination with regard to the motion for summary judgment filed by Defendant, Hillside Township (“Hill *499 side”) seeking to dismiss the property tax appeal of the Plaintiffs, Muoi and Annie Huwang (collectively “the Huwangs”), for failure to pay taxes pursuant to N.J.S.A. 54:51A-1.
The facts are not in dispute. In July 2000, Plaintiff Muoi Huwang (individually “the debtor”) filed for bankruptcy (Chapter 13) in the United States Bankruptcy Court for the District of New Jersey.[1] Hillside was included as a creditor in the bankruptcy proceeding. As part of the Chapter 13 restructuring plan (dated September 21, 2000, and confirmed by the Bankruptcy Court on August 13, 2002; hereinafter the “restructuring plan”), the debtor was required to make sixty consecutive monthly payments of $3,072.00 to the trustee. These payments were intended to repay specified amounts owed to certain priority creditors, with five percent (5%) going to unsecured creditors.
According to the restructuring plan, the debtor owed Hillside approximately $144,912.88 in back property taxes. These taxes were assessed to the Huwangs’ property located at 1605 Maple Avenue, Hillside Township, Union County, and designated by Hillside as Lot 1 in Block 1001 (the “Subject Property”). The restructuring plan provided for Hillside to be paid the full $144,912.88. Since the inception of, and in accordance with the restructuring plan, the debtor has consistently made the monthly payments, a portion of which have been applied to the back taxes owed. As of January 2004, the amount of remaining back taxes owed to Hillside was approximately $37,000. All taxes and municipal charges on the Subject Property for the 2003 tax year are paid.
In March 2003, the Huwangs appealed their 2003 taxes on the Subject Property to Union County Board of Taxation (the “Board”) alleging over-assessment. Hillside moved for dismissal of the appeal for failure to pay property taxes on the Subject Property pursuant to N.J.S.A. 54:3-27. In response, the Huwangs submitted papers claiming financial hardship but did not appear at the scheduled hearing before the Board held on May 29, *500 2003.[2] The Board’s Judgment of June 30, 2003 dismissed the Huwangs’ complaint for failure to pay municipal taxes and charges. On August 12, 2003, the Huwangs filed a complaint with the Tax Court challenging the Board’s dismissal. Hillside has now moved for summary judgment pursuant to N.J.S.A. 54:51A-1 claiming that the case should again be dismissed for the Huwangs’ failure to pay taxes on the Subject Property.
When deciding a motion for summary judgment under R. 4:46-2, the court must determine whether there exists a genuine issue as to any material fact. In addition,
[It must be determined] whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.
[Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523, 666 A.2d 146, 147 (1995).]
Since the facts are not disputed, the matter is accordingly ripe for summary judgment. R. 4:46-2(c).
Hillside contends that, regardless of the Huwangs’ compliance with the restructuring plan, the fact remains that there are still delinquent taxes. Hillside argues that the Board’s dismissal was proper under N.J.S.A. 54:3-27 and that the same result is now warranted on appeal to the Tax Court under N.J.S.A. 54-.51A-1 citing the Appellate Division’s ruling in Bllum Ltd. Partnership v. Bloomfield Township, 294 N.J.Super. 201, 682 A.2d 1229 (App.Div. 1996). Hillside acknowledges that both N.J.S.A. 54:3-27 and N.J.S.A. 54:51A-1 have been amended[3] since the Bllum decision to provide for an “interests of justice” exception to the tax *501 payment requirement. Still, Hillside contends that the restructuring plan alone is insufficient to meet the “interests of justice” standard. Furthermore, Hillside contends that the 2003 tax appeal was not contemplated by, and therefore, could not be subject to the restructuring plan, since that cause of action did not accrue until after the bankruptcy proceeding. Accordingly, Hillside argues, the restructuring plan does not preempt or otherwise relieve the Huwangs’ obligation to pay property taxes under New Jersey law as a prerequisite to pursuing their 2003 tax appeal.
The Huwangs argue that since the debtor has fully complied with the restructuring plan, “the interests of justice” require the relaxation of the tax payment requirement under both N.J.S.A. 54:51A-1b and N.J.S.A. 54:3-27. Furthermore, the Huwangs claim that the restructuring plan confirmed by the Federal Bankruptcy Court preempts the requirements of N.J.S.A. 54:51A-1b and N.J.S.A. 54:3-27.
I. TAX PAYMENT REQUIREMENT
Hillside contends that pursuant to Bllum, a County Board of Taxation’s proper dismissal of a tax appeal for nonpayment of taxes under N.J.S.A. 54:3-27, precludes an appeal to the Tax Court. The court in Bllum recognized that there are different tax payment requirements under N.J.S.A. 54:51A-1 and N.J.S.A. 54:3-27. Bllum, supra, 294 N.J.Super, at 206, 682 A.2d at 1231. See also Powder Mill Assoc. v. Township of Hamilton, 190 N.J.Super. 63, 69, 461 A.2d 1199, 1202 (App.Div.1983). N.J.S.A. 54:3-27 provides that a taxpayer must:
pay to the collector of the taxing district no less than the total of all taxes and municipal charges due, up to and including the first quarter of the taxes and municipal charges assessed against him for the current tax year in the manner prescribed in R.S. 54:4-66.
Notwithstanding the foregoing, the county board of taxation may relax the tax payment requirement and fix such terms for payment of the tax as the interests of justice may require. If the county board of taxation refuses to relax the tax payment requirement and that decision is appealed, the tax court may hear all issues without remand to the county board of taxation as the interests of justice may require.
*502 The payment of part or all of the taxes upon any property, due for the year for which an appeal from an assessment upon such property has been or shall hereafter be taken, or of taxes for subsequent year’s, shall in nowise prejudice the status of the appeal or the rights of the appellant to prosecute such appeal, before the county board of taxation, the Tax Court, or in any court to which the judgment arising out of such appeal shall be taken, except as may be provided for in R.S.54:51A-1.
[Ibid. (Emphasis added).]
N.J.S.A. 54:51A-1 provides:
a. Any party who is dissatisfied with the judgment, action or determination of the county board of taxation may seek review of that judgment, action or determination in the Tax Court by filing a complaint in the Tax Court, pursuant to rules of court.
b. At the time that a complaint has been filed with the Tax Court seeking review of judgment of county tax boards, all taxes or any installments thereof then due and payable for the year for which review is sought must have been paid. Notwithstanding the foregoing, the Tax Court may relax the tax payment requirement and fix such terms of payments as the interests of justice may require.
[Ibid. (Emphasis added).]
The court in Bllum found that
It is dear that N.J.S.A. 54-.51A-1 applies only in situations where the appeal to the Tax Court is from the county tax board. N.J.S.A. 54:3-27 applies to appeals either taken to the county tax board or the Tax Court and has impact “in any court to which the judgment arising out of such appeal shall be taken____” Thus, the last sentence of N.J.S.A. 54:3-27 provides that where there is a judgment which is appealed the provisions of that paragraph apply in any court to which the judgment arising out of the appeal is taken.
[Bllum, supra, 294 N.J.Super. at 204-05, 682 A.2d at 1230-31 (citations omitted).]
When comparing differing statutory tax payment standards, it has been held that
[I]t was within the Legislature’s broad range of discretion to prescribe different jurisdictional requirements for access to the Tax Court by taxpayers who were appealing from a county board decision and those filing initial assessment appeals. [Schneider v. City of East Orange, 196 N.J.Super. 587, 594-95, 483 A.2d 839, 843 (App.Div.1984), aff'd o.b., 103 N.J. 115, 510 A.2d 1118, cert. denied, 479 U.S. 824, 107 S.Ct. 97, 93 L.Ed.2d 48 (1986).] [4]
Bllum held that
*503 [w]hen a taxpayer flies an appeal with the county tax board, which results in either an adjudication on the merits or dismissal, the issue on further appeal [to the Tax Court] is limited to whether the tax board properly reached its result— |T]he taxpayer cannot circumvent its failure to pay timely taxes by appealing to the Tax Court for a determination on the merits as if the dismissal of its first appeal had no preclusive effect.
[Bllum, supra, 294 N.J.Super, at 204, 682 A.2d at 1230, (emphasis added)].
Appeals pursuant to N.J.S.A. 54:51A-1 are essentially limited to the board’s determination. There is no statutory intent evident to give a taxpayer two bites at the apple.
[Id. at 207, 682 A.2d at 1232.]
In the present matter, the Huwangs have appealed to the Tax Court from the Board’s decision to dismiss their tax appeal for failure to pay taxes as required by N.J.S.A. 54:3-27. Such an appeal is precisely what was contemplated by N.J.S.A. 54:51A-1. “When a statute is clear on its face, a court need not look beyond the statutory terms to determine the legislative intent.” State v. Churchdale Leasing, Inc., 115 N.J. 83, 101, 557 A.2d 277, 286 (1989); GE Solid State, Inc. v. Director, Div. of Taxation, 132 N.J. 298, 307, 625 A.2d 468, 472 (1993); Department of Law & Public Sctfety v. Bigham, 119 N.J. 646, 650, 575 A.2d 868, 870 (1990); State v. Butler, 89 N.J. 220, 226, 445 A.2d 399 (1982). Since the present matter is not a direct appeal to the Tax Court,[5] the Huwangs are not required to pay “all taxes and *504 municipal charges due” as set forth in N.J.S.A. 54:3-27, but rather, they are required to pay municipal taxes and charges for “the year for which review is sought.” N.J.S.A. 54:51A-1. N.J.S.A. 54:51A-1 does not require that all taxes must be paid, nor does it address taxes due and payable in the years before the year in which review is sought. The year at issue in this case is 2003, and since there is no allegation that taxes for 2003 are delinquent, then the Huwangs’ appeal of the Board’s determination to the Tax Court is appropriate under N.J.S.A. 54:51A-1.[6]
II. INTERESTS OF JUSTICE
Having determined that the Huwangs’ appeal is properly before the Tax Court, the court must now review the propriety of the Board’s dismissal of the case for failure to pay “all taxes and municipal charges due” pursuant to N.J.S.A. 54:3-27. Bllum, supra, 294 N.J.Super. at 206, 682 A.2d at 1231. To that end, the court will determine whether the interests of justice require relief from the Huwangs’ tax payment obligation.
To avoid exposing a municipality to financial hardship through the non-payment of taxes, the intent of the Legislature when originally enacting N.J.S.A. 54:3-27 and N.J.S.A. 54:51A-1 was to “assure the flow of revenue to a municipality while an appeal is pending.” See Wellington Belleville, L.L.C. v. Belleville, 20 N.J.Tax 331, 335 (Tax 2002); Lecross Assocs. v. City Partners, 168 N.J.Super. 96, 98-99, 401 A.2d 1099, 1100-01 (App.Div.), certif. denied, 81 N.J. 294, 405 A.2d 837 (1979). See also, J.L. Muscarelle, Inc. v. Saddle Brook Tp., 14 N.J.Tax 453, 457 (Tax 1995)(finding that the purpose of paying taxes before an appeal is to shift the burden of unpaid taxes away from other taxpayers in the district).
*505 However, in the 1999 amendment to both N.J.S.A. 54:3-27 and N.J.S.A. 54:51A-1,[7] the Legislature included the “interests of justice” exception to the tax payment requirement. In Christian Asset Management Corp. v. City of East Orange, 19 N.J.Tax 469 (Tax 2001), the court found the 1999 amendment to both statutes to mean that:
the tax payment requirement is no longer a jurisdictional matter incapable of being relaxed by this court. The Legislature has vested the judge with limited discretion to relax this requirement in the interests of justice. The effect of this amendment is to allow the Tax Court to hear the merits of a case, if required by the interests of justice, even if the local county board of taxation previously dismissed the ease for failure to pay taxes.
In light of this amendment, this court is not required to dismiss [a]... complaint as a matter of jurisdiction. Rather, the Court is vested with the power to decide whether hearing [thej case would best serve the interests of justice.
[Id. at 475 (emphasis added).]
In Wellington Belleville, the Tax Court found that “in preserving the tax payment requirement as it did, the Legislature intended that the relaxation of the requirement be granted sparingly, and in limited circumstances.” Wellington Belleville, supra, 20 N.J.Tax at 336. The court went on to establish a set of minimal criteria that may warrant relaxation of the tax payment requirement. The circumstances “must be (1) beyond the control of the property owner, not self-imposed, (2) unattributed to poor judgment, a bad investment or a failed business venture, and (3) reasonably unforeseeable.” Ibid. These criteria, however, were not intended to be all encompassing. The court must weigh all evidence relating to the totality of the circumstances resulting in non-payment of taxes, and make a fact sensitive determination on a case-by-case basis, as to whether the statutory tax payment should be relieved in the interests of justice.
The court has had the opportunity to review the public file maintained by the bankruptcy court with regard to the debtor’s case, of which judicial notice is taken.[8] The determination to be *506 made in the present matter, however, does not require re-adjudication of the case that was before the bankruptcy court; rather, this court should only concern itself with whether or not the interests of justice require a relaxation of the obligation to pay “all taxes and municipal charges due” pursuant to N.J.S.A. 54:3-27, in view of the debtor’s compliance with the payment schedule imposed by the restructuring plan for the back taxes owed.
The debtor’s Chapter 13 bankruptcy proceeding provided Hillside (as a creditor and a party to the proceeding) with at least two opportunities to challenge the legitimacy of the debtor’s petition.[9]
First, Hillside could have requested a hearing to determine whether or not the debtor’s Chapter 13 bankruptcy petition was filed in good faith. In the case of In re Lilley, Jr., 91 F.3d. 491, 496 (3d Cir.1996),[10] rev’g, 185 B.R. 489 (E.D.Pa.), aff'g in part, 181 B.R. 809 (Bankr.E.D.Pa.1995), the United States Court of Appeals, Third Circuit found that while Chapter 13 contains no explicit good faith requirement, 11 U.S.C. § 1307(c) provides that *507 Chapter 13 petitions may be dismissed “for cause.” Ibid. The Third Circuit (joining the Seventh, Ninth and Tenth Circuits) held that “the good faith of Chapter 13 filings must be assessed on a case-by-case basis in light of the totality of the circumstances.” Ibid., citing In re Love, 957 F.2d 1350, 1355 (7th Cir.1992); In re Eisen, 14 F.3d 469, 470 (9th Cir.1994). The court found that relevant factors to be considered in a good faith inquiry include:
.. .the nature of the debt ...; the timing of the petition; how the debt arose; the debtor’s motive in filing the petition; how the debtor’s actions affected creditors; the debtor’s treatment of creditors both before and after the petition was filed; and whether the debtor has been forthcoming with the bankruptcy court and the creditors.
[Id., citing In re Love, supra, 957 F.2d at 1357].
There are notable similarities between the Wellington Belleville criteria and the factors considered by the bankruptcy court in a “good faith” determination. Generally in both instances, the underlying facts, circumstances and motives that influenced the actions of the parties are subjected to careful scrutiny by a court of competent jurisdiction. Notwithstanding, this court is satisfied that “the good faith inquiry is a fact intensive determination better left to the discretion of the bankruptcy court.” In re Lilley, 91 F.3d at 496, quoting citing In re Love, supra, 957 F.2d at 1355. Since the good faith of the debtor’s Chapter 13 petition was not raised by Hillside in the bankruptcy proceeding, the Tax Court will not consider the issue here. See Lloyd M. Cohen v. Dir., Div. of Tax., 19 N.J.Tax 58, 64-5 (Tax Ct.2000) (finding that “Although the Bankruptcy Court does not have exclusive jurisdiction of the matters involving dischargeability in bankruptcy.. .the Bankruptcy Court is most qualified to deal with the issue”).
Second, Hillside had the opportunity to object to the restructuring plan during the bankruptcy proceeding. 11 U.S.C. § 1325(b)(1). The bankruptcy court must confirm the restructuring plan if the conditions of 11 U.S.C. § 1325(a) are met. Among those conditions is a requirement that a restructuring plan is proposed in “good faith.” 11 U.S.C. § 1325(a)(3). In In re Waldron, 785 F.2d 936 (11th Cir.), cert. dismissed, 478 U.S. 1028, 106 S.Ct. 3343, 92 L.Ed. 2d 763 (1986),[11] the Eleventh Circuit Court of Appeals found that
*508 The Bankruptcy Code expressly provides that a bankruptcy court may not confirm a Chapter 13 plan unless “the plan has been proposed in good faith and not by any means forbidden by law.” 11 U.S.C. § 1325(a)(3) (1982). Indeed, “the ‘good faith’ requirement of § 1325(a) is the only safety valve available through which plans attempting to twist the law to malevolent ends may be cast out. The good faith test should be used accordingly.” In re Leal, 1 B.R. 245, 248 (Bankr.D.Colo.1980). [Id. at 939.]
[W]henever a Chapter 13 petition appears to be tainted with questionable purpose, it is incumbent upon the bankruptcy courts to examine and question the debtor’s motives. If the court discovers unmistakable manifestations of bad faith,... confirmation must be denied.
Unmistakable manifestations of bad faith need not be based upon a finding of actual fi-aud, requiring proof of malice, scienter or an intent to defraud. We simply require that the bankruptcy courts preserve the integrity of the bankruptcy process by refusing to condone its abuse.
The cornerstone of the bankruptcy courts has always been the doing of equity. The protections and forgiveness inherent in the bankruptcy laws surely require conduct consistent with the concepts of basic honesty. Good faith or basic honesty is the very antithesis of attempting to circumvent a legal obligation through a technicality of the law.
[In re Waldron at 941.]
The Confirmation Hearing for the restructuring plan was held before the bankruptcy court on April 3, 2002. The bankruptcy court records reveal that no objection to the restructuring plan was made by Hillside at the hearing, or at any time prior to the hearing. As a result of the Confirmation Hearing, the debtor’s restructuring plan was confirmed. The federal bankruptcy code provides that
The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.
11 U.S.C. § 1327(a).
While an objection would not have necessarily resulted in the bankruptcy court’s rejection of the restructuring plan,[12]
*509 a creditor’s failure to raise an objection at a confirmation hearing or to appeal from the order of confirmation will preclude the creditor from challenging the legality of the plan or its provisions at a later point in time.
[In re Elstien, 238 B.R. 747, 754 (Bankr.N.D.Ill., E.Div.1999) (citations omitted).]
In Department of the Treasury for the Commonwealth of Puerto Rico v. Galarza Pagan, 279 B.R. 43 (D.P.R.2002), the Treasury “did not participate in or object to confirmation until it filed its motions two to five months after the plans had been confirmed.” Id. at 47. The court held that
Generally, a confirmed plan will bind the debtor and his creditors [citations omitted]. This binding effect is also applicable to tax authorities [citations omitted]. This can result in adverse consequences to a tax authority if it has failed to diligently participate in the bankruptcy ease.

[Ibid.]

See also In re McKissick, 197 B.R. 206, 207 (Bankr.M.D.Pa., Wilkes-Barre.Div.1996) (holding that “the failure of the Tioga County Tax Claim Bureau to register a timely objection to the plan constitutes an acceptance of the plan in accordance with 11 U.S.C. § 1325(a)(5)(A).”)
Hillside has not directly challenged the restructuring plan. However, in view of the debtor’s lull compliance with the restructuring plan, and Hillside’s implied acceptance of the same, the court finds that Hillside’s attempt to dismiss the Huwangs’ appeal for failure to pay “all taxes and municipal charges due” pursuant to N.J.S.A. 54:3-27, is in essence an indirect challenge to the restructuring plan. Jurisdictional issues notwithstanding, Hillside forfeited its right to challenge the restructuring plan in the United States Bankruptcy Court, and should not now be entitled, either directly or indirectly, to pursue that claim in the Tax Court of New Jersey.
In applying the Wellington Belleville criteria to the facts of this case, the court concludes that the utilization of the available legal remedy of bankruptcy is not tantamount, in and of itself, to a *510 reasonably foreseeable, self-imposed financial hardship that resulted in the non-payment of taxes. “The overriding purpose of the Bankruptcy Code is to relieve debtors from the weight of oppressive indebtedness and provide them with a fresh start.” In re Lilley, Jr., supra, 91 F.3d at 495, citing In re Cohn, 54 F.3d 1108, 1113 (3d Cir.1995). Requiring the Huwangs to pay more than is required under the restructuring plan in order to pursue their tax appeal, would appear to this court to circumvent this stated “overriding purpose.”
The facts and circumstances of every bankruptcy will not justify a relaxation of the tax payment requirement in the interests of justice under N.J.S.A. 54:3-27 and N.J.S.A. 54:51A-1. However, while it is conceivable that the “stigma” of bankruptcy, may, at first glance, taint a debtor as one of poor judgment, who made bad investments, or who failed in business, it is equally conceivable that the totality of the facts and circumstances may lead to a different conclusion. Here, the facts and circumstances indicate that the Huwangs have made a consistent and diligent effort to pay their back taxes in accordance the restructuring plan. Hillside never challenged the “good faith” of the bankruptcy petition or the restructuring plan during the bankruptcy proceeding, and has accepted and applied the debtor’s payments for back taxes as prescribed by the restructuring plan since its inception.
The dismissal of the Huwangs tax appeal in view of these facts and circumstances is precisely the type of unjust result this court believes the Legislature sought to avoid in providing for the interests of justice exception to the tax payment requirement of both N.J.S.A. 54:3-27 and N.J.S.A. 54:51A-1. Since, the Huwangs have adhered, and continue to adhere to the restructuring plan, and since Hillside failed to object to or otherwise challenge the “good faith” of the bankruptcy petition or the restructuring plan, this court finds that the interests of justice require an exception be made to the full tax payment requirement.
III. CONCLUSION
Taking into consideration all the relevant facts and applying the applicable law, the court finds no genuine issue as to any of the *511 material facts. However, when viewed in the light most favorable to the Huwangs, the facts preclude granting the summary judgment in favor of Hillside. Accordingly, Hillside’s motion for summary judgment dismissing the Huwangs’ appeal for failure to pay taxes pursuant to N.J.S.A. 54:51A-1 is denied.
On review of the Board’s dismissal of the Huwangs’ direct appeal for failure to pay taxes pursuant to N.J.S.A. 54:3-27, the court finds that the interests of justice require a relaxation of the tax payment requirement pursuant to N.J.S.A. 54:3-27. In view of this finding, the court need not address the issue of preemption. The Huwangs’ 2003 tax appeal shall be set down for trial in the Tax Court.

 In re Muoi T. Huwang a/k/a Muoi Tchen, Case No. 00-37427RG.

 Hillside notes in its moving papers that the Huwangs failed to appear at the scheduled hearing before the Board and therefore, failed to prosecute their appeal. However, Hillside did not raise this issue before the Board and apparently raises it here for the first time. Hillside only asked the Board to dismiss for failure to pay taxes pursuant to N.J.S.A. 54:3-27, and indeed, the Board's judgment dismissed the appeal only for that reason.. The issue of whether or not the Huwangs failed to prosecute their case before the Board has not been raised or decided and, accordingly, will not be addressed by this court.

 L. 1999, c. 208, § 5, eff. Sept. 17, 1999.

 In Schneider, the court addressed the different tax payment requirements in N.J.S.A. 54:3-27 and N.J.S.A. 54:2-39. N.J.S.A. 54:2-39 was repealed by N.J.S.A. 54:51A-1 (L. 1983, c. 45, eff. Jan. 28, 1983). The legislative intent of N.J.S.A. 54:2-39 (now embodied in N.J.S.A. 54:51A-1) can be found in the Senate Revenue, Finance and Appropriations Committee report pertaining to the 1977 amendment fixing the obligation to pay taxes pending appeal:
*503 An appellant dissatisfied with the judgment of the county board of taxation may appeal that judgment to the Division of Tax Appeals. There is no direction in current law regarding tax payments. This bill would require that at the time a petition of appeal has been filed with the Division of Tax Appeals all taxes for the current year must have been paid. Appeals filed with the Division of Tax Appeals are generally after the November 1 quarterly tax installment is due and payable. Thus, this provision requires an appellant to be current in his tax payments notwithstanding the appeal. This imposes no burden of prepayment of taxes on the appellant, and does not put the burden of an appellant’s unpaid property taxes on the other taxpayers in a taxing district-a burden reflected in the reserve for uncollected taxes, and thus in the tax rate.
[Statement to Assembly, No. 2147, Dated: July 11, 1977 (emphasis added)].

 "N.J.S.A. 54:51A-1 [does not apply] to direct appeals filed in the Tax Court.. .A taxpayer electing to appeal a municipal assessment directly to the Tax Court is subject...to the payment obligation imposed by N.J.S.A. 54:3-27." Powder Mill Assoc., supra., 190 N.J.Super. at 69, 461 A.2d at 1202.

 The court’s analysis could have ended at this point with a simple denial of Hillside’s summary judgment motion for failure to pay taxes pursuant to N.J.S.A. 54:51A-1. However, since counsel for both parties have treated this motion as a review of the Board’s dismissal, and both have fully briefed and argued their respective positions, the court will proceed to the ultimate issue in the case, having already determined that the facts are not in dispute and that the matter is ripe for summary judgment. R. 4:46-2(c).

 L. 1999, c. 208, § 5 and§ 14, respectively, eff. Sept. 17, 1999.

 N.J.R.E. 201(b)(4). See also Williamson v. Treasurer of the State of New Jersey, 350 N.J.Super. 236, 242, 794 A.2d 873 (App.Div.2002) (taking "judicial *506 notice of the fact that pleadings and other documents on file in the Superior Court are generally public records”), and Grand View Gardens, Inc. v. Borough of Hasbrouck Heights, 14 N.J.Super. 167, 170, 81 A.2d 510, 511 (App.Div., 1951) (finding that "judicial knowledge is [generally] limited to facts evidenced by public records and facts of general notoriety”).

 11 U.S.C. § 341 requires the trustee to convene and preside at meetings of creditors and equity security holders (commonly known as 341(a) hearings). It is likely that creditors can voice objections to the petition during such hearings. However, since "[t]he court may not preside at, and may not attend, any [341(a)] meeting,” 11 U.S.C. § 341(c), this court will focus only on the challenges to the petition that may be made as part of the bankruptcy court record.

 Petitioner Ernest R. Lilley "attempted to defraud the Government by intentionally evading payment of his Federal income taxes..." In re Lilley, supra, 91 F.3d at 494. The bankruptcy court denied the IRS’s motion to dismiss; but the district court reversed finding that Mr. Lilley's "action constitutes cause for dismissal of his Chapter 13 bankruptcy petition pursuant to 11 U.S.C. § 1307(c).” Ibid. The Court of Appeals, Third Circuit reversed the district court concluding that pre-petition "tax fraud is not ‘cause’ for dismissal of a Chapter 13 petition” Ibid., since the "tax-related debts...at issue [were] dischargeable under [11 U.S.C. § 1328(a) and 11 U.S.C. § 523(a)(1)(C)].” Id. at 495. In the alternative, the IRS argued "for a determination whether debtor's petition was filed in bad faith (emphasis added)." Id. at 496.

 The court found that "the Waldrons were not financially distressed and had no real need to invoke the protections of bankruptcy laws,” In re Waldron, supra, *508 785 F.2d at 938, since they "in fact, owe[d] no debts [and were] completely solvent.” Id. at 937. By contrast in the present matter, while this court is not privy to all the facts that were before the bankruptcy court concerning the debtor’s finances, it is noted that the debtor’s petition reveals a prior bankruptcy (Chapter 13) filed May 3, 1996 (dismissed on the debtor’s own motion, June 26, 2000), as well as debts equal in range to his assets (both debts and assets estimated to be between $100,001 and $500,000).

 "In a Chapter 13 proceeding, the court must confirm a plan, even over the objection of a secured creditor, if the plan provides that the secured creditor will *509 retain its lien, and the 'value, as of the effective date of the plan, of property to be distributed under the plan on account of such [secured] claim is not less than the allowed amount of such claim.’ ” In re Maddox, 194 B.R. 762, 764 (Bankr. D.N.J.1996), aff'd, 200 B.R. 546 (D.N.J.1996), citing 11 U.S.C. § 1325(a)(5)(B)(ii).