**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-0559-18T4
     A-0560-18T4
     A-0561-18T4
     A-0563-18T4
     A-0564-18T4
     A-0565-18T4
     A-0566-18T4
     A-0567-18T4

GLOBAL LIFE ENTERPRISES,
LLC and 446 BELLEVUE, LLC,

  Plaintiffs-Appellants,

v.

CITY OF TRENTON,

  Defendant-Respondent.

_____

Argued telephonically May 20, 2020 –
Decided June 15, 2020

Before Judges Haas, Mayer and Enright.

On appeal from the Tax Court of New Jersey, Docket
Nos. 19233-2013; 08867-2014; 08044-2015; 09614-
2015; 09618-2015; 11899-2015; 12808-2016; and
12811-2016.

1

Jeffrey M. Hall argued the cause for appellants (Szaferman, Lakind, Blumstein & Blader PC attorneys; Jeffrey M. Hall, on the briefs).

John V. Dember argued the cause for respondent (Dember Law, LLC, attorneys; John V. Dember, on the brief).

PER CURIAM

In these consolidated appeals, plaintiffs Global Life Enterprises, LLC (Global Life) and 446 Bellevue, LLC (446 Bellevue) appeal from a July 23, 2018 order denying a motion to reinstate tax appeal complaints and an August 31, 2018 order denying reconsideration.[1]  We affirm.

The facts and procedural history leading to these appeals are intertwined. This matter involves six contiguous properties on Bellevue Avenue in Trenton. The parcels are designated Property A through Property F (Properties) and were the situs of Mercer Medical Center, formerly known as Mercer Hospital.  On August 29, 2013, Global Life purchased the Properties for $500,000.  When the Properties were used for hospital purposes, the lots were exempt from local property taxes.  After Global Life acquired the Properties, the lots were no

---

[1]  Although 446 Bellevue was substituted as the named plaintiff by the Tax Court, Global Life was named on two of the final judgments on appeal.

A-0559-18T4

longer designated for hospital use and defendant, City of Trenton (City) imposed a tax assessment of $9,100,000 collectively on the six lots.

Despite receipt of tax bills, Global Life failed to pay taxes on the Properties and defendant issued tax sale certificates. On June 25, 2014, defendant issued tax sale certificates for Properties A, B, and C. At some point, the tax sale certificates were acquired by NJNY Lien, L.L.C. (NJNY). NJNY became full title owner by obtaining final judgments of tax sale certificate foreclosure for Property A on March 15, 2016, for Property B on February 17, 2017, and for Property C on June 28, 2017.

On June 25, 2014, defendant also issued a tax sale certificate for Property E. Property E was "transferred by deed" from Global Life to 446 Bellevue on October 4, 2016.

Global Life, believing the Properties were improperly assessed, filed a series of tax appeals challenging defendant's assessment of the six lots.[2]

---

[2] On February 10, 2014, Global Life filed a tax appeal with the Mercer County Board of Taxation challenging the assessment of Properties A, C, and E for the 2013 tax year. On March 31, 2014, Global Life filed an appeal with the Tax Court challenging the assessment of Properties A, B, C, and E for the 2014 tax year. On April 1, 2015, Global Life filed a tax appeal with the Tax Court challenging the assessment of Properties A, B, C, D, and E for the 2015 tax year. On June 22, 2015, Global Life appealed the tax board judgment for Properties A, B, C, and F for the 2015 tax year. That same day, Global Life filed a second complaint to include

However, Global Life never paid the taxes on the Properties prior to filing the tax appeals.

In December 2014, Global Life and 446 Bellevue entered into a purchase agreement. Pursuant to that agreement, 446 Bellevue would acquire the Properties for $1.5 million. Around that same time, the vacant buildings on the Properties sustained damage due to theft and vandalism. In addition, utility service for the Properties was discontinued in December 2014 or January 2015, causing water to accumulate in the buildings' basements because the sump pumps stopped working and pipes burst due to the lack of heat.

On January 21, 2015, defendant issued a tax sale certificate for Property D. The purchaser of the certificate assigned it to NJNY, and NJNY became the full title owner by obtaining a final judgment of tax sale certificate foreclosure on March 12, 2018.

Global Life reneged on the purchase agreement with 446 Bellevue for the sale of the Properties. As a result, on April 30, 2015, 446 Bellevue filed a complaint against Global Life for specific performance in the Chancery court.

Property D in the appeal. On August 13, 2015, Global Life filed another complaint challenging the assessment of Property E for the 2015 tax year.

A-0559-18T4

On June 24, 2015, defendant issued a tax sale certificate for Property F. NJNY purchased the certificate on June 24, 2016 and became the full title owner of Property F by a final judgment of tax sale certificate foreclosure entered on July 11, 2017.[3]

On December 9, 2015, the parties appeared before the Tax Court judge to review the status of the tax appeal complaints. At that conference, Global Life's counsel explained Global Life had a contract purchaser for the Properties but counsel did not know the purchaser's identity. The judge asked if the purchaser intended to prosecute the tax appeal complaints. To ensure the complaints would be prosecuted, either by the purchaser or Global Life, the judge issued a December 9, 2015 order requiring a trial-ready appraisal report for the 2013, 2014, and 2015 tax years to be submitted no later than February 24, 2016. The judge also scheduled an in-person trial call for March 9, 2016. She further noted that Global Life's failure to comply with the requirements of the order "may result in dismissal of the appeals by the court or upon defendant's motion pursuant to [Rule] 4:23-2."

---

[3] We provide the dates of the final judgment of tax sale certificate foreclosures because the dates are important in determining whether taxes were fully paid by the property owner as of the filing date of each tax appeal as required by statute.

On February 19, 2016, one week before the due date for the appraisal report, as part of a plan of reorganization, Global Life assigned its interest in the Properties to Steven Mitnick in trust for the benefit of Global Life's creditors. Mitnick was not provided with a copy of the December 9, 2015 order by Global Life or defendant.

On March 9, 2016, defendant's counsel appeared before the Tax Court judge for the scheduled in-person trial call. Neither Global Life nor Mitnick appeared. Defense counsel told the judge that Global Life failed to provide the appraisal report in accordance with the December 9, 2015 order and requested dismissal of Global Life's tax appeal complaints.

Rather than dismissing the complaints on March 9, the Tax Court judge waited several weeks to allow Global Life to comply with the discovery obligation under the December 9, 2015 order or, alternatively, to request additional time to submit the court-ordered appraisal report. After the passage of three weeks, in a March 31, 2016 order, the Tax Court judge dismissed Global Life's complaints under Docket Nos. 19233-2013, 8867-2014, and 8044-2015 (collectively, the first three tax appeals) "without prejudice for failure to appear and for a lack of prosecution."

A-0559-18T4

On June 10, 2016, Global Life and 446 Bellevue settled their Chancery court litigation regarding the purchase of the Properties. Pursuant to the settlement agreement, Global Life agreed to transfer the Properties, including the right to prosecute the tax appeals, to 446 Bellevue. However, both parties' obligations under the settlement agreement "with respect to the purchase, sale and transfer" of the Properties were "expressly contingent upon the abandonment, transfer, or reversion of the deeds, title, or possession" from Mitnick to Global Life.

In a July 7, 2016 order related to Global Life's reorganization, with an effective date of June 10, 2016, Mitnick was authorized to abandon his right, title, and interest in the Properties to Global Life.

On August 12, 2016, the Chancery judge entered a consent judgment reflecting the June 10, 2016 settlement agreement between Global Life and 446 Bellevue. The consent judgment provided 446 Bellevue had to acquire Property A directly from NJNY and acquire Properties B through F from the various holders of the tax sale certificates. The holders of the tax sale certificates for Properties B through F had yet to foreclose on those certificates. In addition, 446 Bellevue received a "monetary judgment" against Global Life in the amount of $7 million, representing compensatory damages.

On September 9, 2016, Global Life filed a complaint in the Tax Court appealing the 2016 tax assessment with respect to Property E. On that same date, Global Life filed a second complaint in the Tax Court appealing the 2016 tax assessment for Property F.

On October 4, 2016, Global Life and 446 Bellevue entered into a general assignment of all rights and bill of sale. Global Life assigned to 446 Bellevue "[a]ll rights to receive tax refunds, make tax appeals, and any and all legal or other rights to the fullest extent permitted by law[.]" On that same date, Global Life assigned to 446 Bellevue the deed to Property E.

On April 26, 2017, NJNY authorized 446 Bellevue to act on its behalf regarding the Properties in which NJNY had an interest. After obtaining the rights and interests to pursue the tax appeals from Global Life and NJNY, 446 Bellevue attempted to resolve the eight pending complaints challenging defendant's assessment of the Properties.

On September 5, 2017, Robert Gagliano, a professional appraiser, issued the report on behalf of 446 Bellevue regarding the value of the Properties. Gagliano first inspected the Properties on August 13, 2013 and again on August 10, 2017. He deemed the condition of the Properties to be "poor" and noted the electrical, plumbing, heating, ventilation, and elevator systems were not

A-0559-18T4

functional at the time of his second inspection. The appraiser explained the structures on the Properties were vandalized and sustained water damage between May and August 2015.

In March 2018, unable to resolve the tax assessment issues with defendant, 446 Bellevue filed a motion in the Tax Court, requesting reinstatement of the first three tax appeals dismissed in the March 31, 2016 order. It also sought to be substituted as the named plaintiff in the pending tax appeals and requested dismissal of defendant's counterclaim. In an April 10, 2018 order, a different Tax Court judge granted the substitution, dismissed defendant's counterclaim, and deferred decision on the motion to reinstate the first three tax appeals.

On June 13, 2018, defendant filed opposition to the motion to reinstate the first three tax appeals, and a cross-motion to dismiss the complaints in Docket Nos. 009614-2015, 009618-2015, 011899-2015, 012808-2016, and 012811-2016 (collectively, the next five tax appeals) for failure to pay taxes prior to filing those appeals.

In a July 23, 2018 order, the Tax Court judge denied reinstatement of the first three tax appeals and dismissed the next five tax appeals for failure to pay taxes. The Tax Court judge explained:

9

Plaintiff's motion to reinstate the [c]omplaint . . . is denied, due to the failure of [p]laintiff to provide a trial ready expert report and due to the prejudice to defendant as a result of the passage of time; and

It is further ordered that defendant's opposition to plaintiff['s] motion to reinstate the case is interpreted as a motion to dismiss the [c]omplaint with prejudice pursuant to [Rule] 4:23-5(a)(2), and the representatives of the plaintiff having been present in court for two separate hearings, and the opposition papers clearly having alleged that the discovery ordered by Judge Sundar had not been provided, and the requirements of the [Rule] having been met, defendant's motion is granted and plaintiff's complaint is dismissed with prejudice[.]

With regard to defendant's motion to dismiss the complaints for the next five tax appeals, the judge stated the complaints were dismissed for failure to pay taxes "as required by N.J.S.A. 54:51A-1[(b)] . . . and in reliance on the holding in Dover-Chester [Assocs.] v. Randolph T[w]p., 419 N.J. Super. 184 (App. Div. 2011)[.]"

On August 2, 2018, 446 Bellevue moved for reconsideration of the July 23, 2018 order. Defendant cross-moved for entry of judgments with prejudice as to the first three tax appeals pursuant to Rule 4:23-5(a)(2).

In denying the motion for reconsideration, the judge concluded:

This [c]ourt acknowledges that the [March 31, 2016] order was issued without prejudice, but the [c]ourt finds

that the passage of time has created prejudice to the City of Trenton.

There are three separate bases for this finding of prejudice[:] first, there is a new assessor for the City; second, the damage done to the property . . . is such that the City would be unable to adequately defend its 2013 added assessment and its 2014 and 2015 assessments due to the passage of time; [and] third, the nature of tax appeals is such that time matters, each year is a new budget and a new tax rate.

To burden the current taxpayers of the City of Trenton with potential refunds with interest for tax appeals that were dismissed over two years ago, through no fault of the City, would be unfair, unjust, and inequitable.

Regarding defendant's cross-motion to dismiss the next five tax appeals for failure to pay taxes, the judge concluded 446 Bellevue failed to provide evidence demonstrating "taxes were paid in conformance with the statute or that the failure to pay taxes and municipal assessments should be excused in the interest of justice."

On appeal, 446 Bellevue argues that procedural deficiencies invalidated the dismissal of the first three tax appeals, both the initial dismissal without prejudice and the subsequent dismissal with prejudice. Regarding the next five tax appeals, it argues that the statutory payment requirement was satisfied or, alternatively, the payment requirement should have been relaxed in the "interests of justice."

A-0559-18T4

We begin with 446 Bellevue's claim that the Tax Court judge erred by denying its motion to reinstate the first three tax appeals. Those appeals were dismissed based on the failure to provide an expert appraisal report in accordance with the December 9, 2015 order. 446 Bellevue contends only Mitnick, as the record title owner to the Properties pursuant to the February 2016 deed assignment, had "the right or any interest in opposing the dismissal[s]" and he had no notice of the Tax Court judge's March 31, 2016 order dismissing the first three tax appeals without prejudice.

446 Bellevue also argues the Tax Court judge's application of Rule 4:23-5 deprived it of the required notice under the Rule. 446 Bellevue contends that if it received notice in accordance with Rule 4:23-5(a)(2), it would have produced the expert appraisal report or provided evidence that "exceptional circumstances" prevented it from completing the appraisal report.

We review dismissal of a complaint with prejudice for failure to provide discovery for abuse of discretion. Abtrax Pharms., Inc. v. Elkins-Sinn, Inc., 139 N.J. 499, 520 (1995). We will decline to interfere with the exercise of that discretion absent demonstration of a manifest injustice. St. James AME Dev. Corp. v. City of Jersey City, 403 N.J. Super. 480, 484 (App. Div. 2008). We will also decline to interfere with a court's discretionary decision to deny a

reconsideration motion unless "(1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or (2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence." Fusco v. Bd. of Educ. of Newark, 349 N.J. Super. 455, 462 (App. Div. 2002) (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)).

A trial judge has discretion regarding sanctions to be imposed for violation of the discovery rules but "the sanction must be just and reasonable." Mauro v. Owens-Corning Fiberglas Corp., 225 N.J. Super. 196, 206 (App. Div. 1988), aff'd, 116 N.J. 126 (1989). The "ultimate sanction of dismissal" is to be used "only sparingly." Abtrax Pharms., 139 N.J. at 514 (quoting Zaccardi v. Becker, 88 N.J. 245, 253 (1982)). "The dismissal of a party's cause of action, with prejudice, is drastic and is generally not to be invoked except in those cases in which the order for discovery goes to the very foundation of the cause of action, or where the refusal to comply is deliberate and contumacious." Ibid. (quoting Lang v. Morgan's Home Equip. Corp., 6 N.J. 333, 339 (1951)). "[A] party invites this extreme sanction by deliberately pursuing a course that thwarts persistent efforts to obtain the necessary facts." Id. at 515. The failure to furnish an expert report may justify the dismissal with prejudice of a claim that has no

13

other supporting evidence. <u>Glass v. Suburban Restoration Co.</u>, 317 N.J. Super. 574, 581-83 (App. Div. 1998).

To succeed on a motion to dismiss with prejudice for failure to provide discovery, the moving party must comply with the "two-step process" established under <u>Rule</u> 4:23-5. <u>Sullivan v. Coverings & Installation, Inc.</u>, 403 N.J. Super. 86, 93 (App. Div. 2008). Under <u>Rule</u> 4:23-5(a)(1), an "aggrieved party may move for dismissal for non-compliance with discovery obligations and, if the motion is granted, the complaint is dismissed without prejudice." <u>Ibid.</u> Next,

> [i]f an order of dismissal . . . without prejudice has been entered pursuant to paragraph (a)(1) of this rule and not thereafter vacated, the party entitled to the discovery may, after the expiration of [sixty] days from the date of the order, move on notice for an order of dismissal . . . with prejudice. . . . The motion to dismiss . . . with prejudice shall be granted unless a motion to vacate the previously entered order of dismissal . . . without prejudice has been filed by the delinquent party and either the demanded and fully responsive discovery has been provided or exceptional circumstances are demonstrated.
>
> [<u>R.</u> 4:23-5(a)(2).]

Here, defendant complied with the two-step process required under <u>Rule</u> 4:23-5 by filing a cross-motion as part of its opposition to 446 Bellevue's motion for reconsideration. As mandated by the <u>Rule</u>, the delinquent party appeared

through counsel on the return date of the cross-motion to dismiss with prejudice. However, as of August 31, 2018, no expert appraisal report had been provided. In accordance with the Rule, a motion to dismiss with prejudice shall be granted "unless a motion to vacate the previously entered order of dismissal . . . without prejudice has been filed by the delinquent party and either the demanded and fully responsive discovery has been provided or exceptional circumstances are demonstrated." R. 4:23-5(a)(2).

We reject 446 Bellevue's argument that the procedural requirements of Rule 4:23-5(a)(2) were not satisfied for the with prejudice dismissal of the first three tax appeals. On March 31, 2016, the Tax Court judge issued an order of dismissal without prejudice for failure to provide an expert appraisal report. 446 Bellevue acknowledged Global Life received notice of that order through the Tax Court's electronic filing system. Even accepting the argument that Mitnick controlled the Properties, he was not designated as assignee until February 19, 2016, just one week before the deadline for submission of the court-ordered appraisal report. There is no explanation in the record why an expert appraisal report was not submitted within the eleven-week time period between the December 9, 2015 order and the February 19, 2016 assignment for the benefit of creditors.

As the Tax Court judge explained, tax appeals are yearly filings and 446 Bellevue had the burden to demonstrate the value of the Properties every single year in challenging defendant's assessment of the Properties. Because an appraisal report for each challenged year went "to the very foundation of the cause of action," Abtrax Pharms., 139 N.J. at 514, and 446 Bellevue had not submitted an expert appraisal report, the Tax Court properly denied 446 Bellevue's motion for reconsideration.

Nor were there any "exceptional circumstances" demonstrating why Global Life or 446 Bellevue were unable to comply with the December 9, 2015 order by providing an expert appraisal report. Global Life's reorganization and efforts to sell the Properties did not constitute "exceptional circumstances." Neither Global Life nor 446 Bellevue explained why they never spoke to Mitnick or each other to comply with the December 9, 2015 order by obtaining an appraisal report. 446 Bellevue also claimed the disparity between the actual value of the Properties and the assessed value presented "exceptional circumstances." However, in the absence of an expert appraisal report, there was no evidence of such a disparity. Having reviewed the record, Tax Court judge did not abuse her discretion in denying reinstatement of the first three tax appeals and denying reconsideration.

We next consider 446 Bellevue's argument that the Tax Court judge erred in dismissing the next five tax appeals because Global Life had not satisfied the statutory requirement to pay taxes before filing the tax appeal complaints. 446 Bellevue claims the purchase of a tax sale certificate by a third-party effectuates actual payment of the municipality's anticipated tax revenue. Further, it contends the gross excessiveness of defendant's assessments of the Properties justified waiver of payment prior to filing a tax complaint under the statutory "interests of justice" exception. We disagree.

The Tax Court judge granted defendant's motion, finding the requirement for taxes to be fully paid prior to filing an appeal in the Tax Court cannot be satisfied by a third party's purchase of a tax sale certificate issued after the filing date of a complaint.[4] She dismissed the next five tax appeals, finding that 446 Bellevue "has not produced any evidence whatsoever to show that the taxes were paid in conformance with the statute, or that the failure to pay taxes and

---

[4] As noted in our prior footnote, Global Life filed all eight tax appeal complaints while it was still the title owner of the Properties. NJNY and 446 Bellevue did not become title owners of the Properties either through final judgments of tax sale certificate foreclosures or deed until after the filing date of the complaints.

A-0559-18T4

municipal assessments should be excused" under that statute's "interests of justice" exception.

For dismissal of the indirect tax appeals,[5] the judge relied on N.J.S.A. 54:51A-1(b). For dismissal of the direct tax appeals,[6] the judge relied on N.J.S.A. 54:3-27. Applying these statutes, the Tax Court judge concluded 446 Bellevue failed to show that the taxes were paid when the complaints were filed because Global Life did not pay the taxes and the payment requirement must be satisfied by the taxpayer on the filing date, rather than by "the subsequent issuance of a tax certificate."

In 1997, the Legislature amended the Tax Sale Law by revising the definition of delinquency for tax appeal purposes. It clarified that the taxes must be current for anyone with an interest to file an appeal and that if a property owner seeks to file an appeal it cannot be delinquent in the payment of taxes. The Legislature stated taxes on a property remain delinquent until

> all unpaid taxes, including subsequent taxes and liens, together with interest thereon shall have been fully paid and satisfied . . . . The delinquency shall remain notwithstanding the issuance of a certificate of sale

---

[5]  An indirect tax appeal governs properties assessed at $1 million or less and is filed first with the county tax board and then may be appealed to the Tax Court.

[6]  A direct tax appeal governs properties assessed above $1 million and may be filed directly with the Tax Court.

> pursuant to [N.J.S.A.] 54:5-32 and [N.J.S.A.] 54:5-46, the payment of delinquent tax by the purchaser of the total property tax levy pursuant to [N.J.S.A 54:5-113.5] and for the purposes of satisfying the requirements for filing any tax appeal with the county board of taxation or the State tax court.
>
> [N.J.S.A. 54:4-67(d).]

The statute as amended applies to the filing of "any tax appeal" without a distinction between direct and indirect tax appeals. Ibid.

In Dover-Chester Associates v. Randolph Township, 419 N.J. Super. 184 (App. Div. 2011), we affirmed the requirement of payment upon filing of a tax appeal "may not be satisfied by the subsequent issuance of a tax certificate" purchased by a third party. Id. at 202. We held the prejudice a municipality suffers as a result of the title owner's failure to pay taxes when due is not eliminated by the subsequent purchase of a tax sale certificate, because the interruption and delay in the municipal revenue flow are prejudicial in themselves. Id. at 203. We recognized the possibility that a tax sale certificate may not be purchased at full price and therefore the legislative purpose in requiring taxes be paid in full prior to filing a tax appeal would be undermined. Id. at 201-02.

Having reviewed the record, including the filing date of Global Life's eight tax appeals, we are satisfied the next five tax appeals were properly

A-0559-18T4

dismissed by the Tax Court judge for failure to pay the delinquent taxes in full prior to filing the tax appeals. Global Life, NJNY, and 446 Bellevue did not pay the delinquent taxes in full as of the filing dates of the tax appeal complaints.

We next consider 446 Bellevue's argument that N.J.S.A. 54:3-27 and N.J.S.A. 54:51A-1(b) allowed the filing of the tax appeals upon less than full payment in "the interests of justice." The question of whether to relax the payment requirement in the "interests of justice" under either statute is reviewed for abuse of discretion. Dover-Chester, 419 N.J. Super. at 202.

In Dover-Chester, we concluded enactment of the "interests of justice" exception without modification of the statutory payment requirement evidenced an intent to apply the exception sparingly. Ibid. We held that a court "must weigh all evidence relating to the totality of the circumstances resulting in non-payment of taxes, and make a fact-sensitive determination on a case-by-case basis, as to whether the statutory tax payment should be relieved in the interests of justice." Ibid. (quoting Huwang v. Hillside Twp., 21 N.J. Tax 496, 505 (Tax 2004)). We noted that the Tax Court declined to apply the "interests of justice" exception to claims that the property was "grossly overassessed," citing Christian Asset Mgmt. Corp. v. City of E. Orange, 19 N.J. Tax 469, 475-76 (Tax 2001), or when the taxpayer's financial difficulty "was due to zoning laws and

other conditions known to the taxpayer at the time of purchase," citing Wellington Belleville, L.L.C. v. Belleville Twp., 20 N.J. Tax 331, 333 (Tax 2002). Ibid.

We are satisfied 446 Bellevue is similarly situated to the taxpayers in Wellington Belleville, Christian Asset Management, and Dover-Chester. Global Life, 446 Bellevue, and those who acquired the tax sale certificates were under no compulsion to make their chosen investments. These entities had an opportunity to investigate the past assessment of the Properties as a hospital use; research the prospective assessments that could be imposed on the Properties; estimate the Properties' market value; and then decide whether the market value, or the prospect of acquiring full title for the price of the tax sale certificates, justified purchasing the Properties or the tax sale certificates and continuing to pay the annual assessments absent any assurance the tax appeals would be successful.

We are satisfied the Tax Court judge correctly dismissed the next five tax appeals because the statutory payment requirement applied, the delinquent payments were not satisfied prior to the filing of the tax appeals, and the "interests of justice" exception was not met to relax the payment requirement.

Thus, she did not err in denying the motion for reconsideration.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION